IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAY ALAN BOVINETT, an individual, | ) | |
| trading as ALAN BOVINETT, | ) | **JURY DEMANDED** |
| Plaintiff, | ) | |
| vs- | ) | NO. |
| | ) | |
| HOMEADVISOR, INC., | ) | |
| a Delaware corporation; | ) | DIST. JUDGE |
| ANGI HOMESERVICES, INC., | ) | |
| a Delaware corporation; | ) | |
| HAWTHORNE DIRECT, LLC, | ) | MAG. JUDGE |
| an Iowa limited liability company; | ) | |
| and DOE I through DOE V, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, RAY ALAN BOVINETT trading as ALAN BOVINETT, by and through his

counsel, MARK H. BARINHOLTZ, P.C., complains against defendants, HOMEADVISOR,

INC., ANGI HOMESERVICES, INC., HAWTHORNE DIRECT, LLC, and DOES I through V,

and each of them jointly and severally, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332(a)(1). The

value of the matter in controversy exceeds $75,000 exclusive of interest and costs, and the

citizenship of the parties is diverse. Plaintiff is a citizen of the state of Illinois.

2. Defendant HomeAdvisor is a Delaware corporation, citizen of the state of Colorado.

Defendant ANGI Homeservices is a Delaware corporation, citizen of the state of Indiana, or

possibly New York. Defendant Hawthorne Direct is an Iowa limited liability company, whose

partners, on information and belief, are not citizens of the state of Illinois.

3. This Court also has original jurisdiction, as this is an action brought, in part, under the

Lanham Act, 15 U.S.C. § 1125 (Sec. 43(a)), jurisdiction being conferred by 15 U.S.C. § 1121(a)

and 28 U.S.C. §§ 1331, and 1338(a), in that certain of these claims arise under the federal

trademark laws, and include a related claim of unfair competition under 28 U.S.C. § 1338(b).

1

4.   This Court also has jurisdiction under 28 U.S.C. § 2201 ("the Declaratory Judgment Act") which empowers this Court to render a declaratory judgment in the controversy.

5.   This Court otherwise has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6.   Venue is properly laid in this District under 28 U.S.C. §§ 1391(b)(2) and (b)(3).

## NATURE OF THE CASE

7.   This case arises out of Defendants' unauthorized capture, use and threatened ongoing use of Bovinett's likeness, image and persona in commercials broadcast via network and cable television and/or otherwise streamed and/or transmitted nationally and worldwide via the internet and social media (the "Commercials"). The Commercials are audio-visual 'video' works which promote HomeAdvisor's commercial activities in the context of HomeAdvisor's ongoing advertising campaign to attract customers and contractor participants to its home improvement services for financial gain. Hawthorne Direct is the advertising agency and direct response media firm which worked side-by-side with HomeAdvisor to create, produce and air the Commercials. ANGI Homeservices is the entity in the process of succeeding to the business of HomeAdvisor.

8.   Bovinett brings this action against the Defendants for fraud, breach of contract, unfair competition, deceptive practices, and other claims to remedy the damage caused and suffered, and to prevent future damage to Plaintiff threatened by Defendants' unauthorized use of Bovinett's likeness, identity and persona.

## PARTIES

9.   Plaintiff ALAN BOVINETT ("Bovinett") is engaged in the business of entertainment, known in the Chicago entertainment community and internationally for his talent and artistry, and for his "look" as a professional for engagements in modeling and acting.

10.   Defendant HOMEADVISOR, INC. ("HomeAdvisor") is, upon information and belief, a Delaware corporation, based in or near Golden, Colorado; HomeAdvisor conducts business worldwide and within the state of Illinois, via a highly interactive internet website

2

identified as *HomeAdvisor.com*, social media platforms, *e.g.*, YouTube, Facebook and Instagram, and via extensive airing of network and cable television broadcasts.

11. Defendant ANGI HOMESERVICES, INC. ("ANGI Homeservices") is, upon information and belief, a Delaware corporation, based in or near, Indianapolis, Indiana, or possibly New York City; on information and belief, ANGI Homeservices is the entity which has succeeded to, or is in the process of succeeding to, the business of HomeAdvisor, through a merger.

12. ANGI Homeservices is, on information and belief, an entity formed for the purpose of merging HomeAdvisor with the firm known as Angie's List to form a single publicly traded company designed to match home services consumers with professional home services providers via online platforms, to conduct business worldwide and within the state of Illinois, using highly interactive internet website(s) and social media platforms, *e.g.*, YouTube, Facebook and Instagram, and via network and cable television broadcasts of video-based commercials.

13. Defendant HAWTHORNE DIRECT, LLC ("Hawthorne Direct"), is, upon information and belief, an Iowa limited liability company, based in or near Fairfield, Iowa, engaged in the business of creating and producing direct response advertising via television commercials and other media for public relations and other purposes.

14. On information and belief, at all times relevant, both HomeAdvisor and Hawthorne Direct, and as planned for the near future ANGI Homeservices, have and/or will continue to have maintained regular and continuous business contacts within the state of Illinois, and have otherwise targeted their tortious acts described herein below at Bovinett knowing they would cause injury to Bovinett here in Illinois.

15. On information and belief, HomeAdvisor, and as planned via ANGI Homeservices, and Hawthorne Direct, conduct business in the state of Illinois, and otherwise direct their activities at the state of Illinois by one or more of the following means: (i) by holding HomeAdvisor out as willing to do business with the citizens of the state of Illinois, one of the most populous states in the nation, (ii) by targeting the state of Illinois including the City of

Chicago, via highly interactive internet website(s) designed to act as an on-demand marketplace, (iii) by contracting with home services professionals located in the state of Illinois and the City of Chicago, (iv) by maintaining online listings of such home services providers located in multiple cities in and throughout the state of Illinois, (v) by utilizing at least one advertisement serving platform which, on information and belief, serves geo-targeted advertising aimed at Illinois, and which is otherwise qualified to do business in the state of Illinois, and (vi) by incorporating so-called "direct response" offers on their respective websites which are hard-coded into the sites, and which link to various home services firms located within the state of Illinois; and all with the intent, purpose and effect of regularly receiving a share of revenues remitted to such Defendants from Illinois.

16. In addition to their regular and continuous business activities conducted in the state of Illinois, HomeAdvisor, including as planned ANGI Homeservices, and Hawthorne Direct, at all times relevant, have by the means and efforts set forth herein below, aimed and targeted their tortious acts and conduct at Bovinett in Illinois, knowing that they would cause harm to Bovinett within the state of Illinois where Bovinett resides and conducts business. HomeAdvisor, ANGI Homeservices, and Hawthorne Direct have thereby created a nexus between their commercial activities, and planned activities, and the wrongful and unlawful acts and conduct aimed at Bovinett in Illinois, connecting such acts and activities to the controversy at hand.

17. Defendants DOE I – V are persons and/or firms whose identity(s) are presently unknown to Plaintiff, but which, upon information and belief, participated, directly or indirectly in, or benefitted directly or indirectly from, the wrongful acts against Plaintiff alleged herein.

18. Plaintiff is further informed and believes and thereon alleges that at all times relevant hereto each of the Defendants, HomeAdvisor (including prospectively ANGI Homeservices) and Hawthorne Direct, acting in concert and with one or more of the Doe Defendants, in doing the acts hereinafter alleged, was acting as the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times relevant acting within the scope of such agency, affiliation, alter-ego relationship and/or

4

employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts and conduct alleged, with full knowledge of all the facts and circumstances, including but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately and otherwise caused thereby, or otherwise aided and abetted and/or conspired to facilitate such acts and conduct as herein alleged against such Defendants, and each of them jointly and severally.

## FACTUAL BACKGROUND

19. At or about 1999, Bovinett, a mechanical engineer by training, and management consultant by profession, was 'discovered' while grocery shopping. He was scouted by a talent agent who was in the business of booking talent to fit a particular 'look.'

20. Since approximately 2000, and in particular since approximately 2006 as a member of the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or "the Union"), Bovinett has been professionally engaged as a model and actor.

21. Within his professional sphere and beyond, Bovinett is favorably regarded as an accomplished and desirable talent. Bovinett has long been associated with his numerous performances in print, television, film and other media for professionals and lay persons alike.

22. Now in the digital era, Bovinett has created and fostered an image for himself, a 'look' which he cultivates, markets and exploits, designed to fulfill the needs of various casting professionals on behalf of their commercial clients. In that regard, Bovinett maintains and moderates professional self-promotions on internet platforms including Facebook, YouTube Twitter and Instagram. Bovinett also curates his own page on the Internet Movie Database ("IMDb") a website that offers professional consumers the ability to review the results and proceeds of Bovinett's talent and entertainment services.

23. In significant part due to his strong appearance as an ethnically ambiguous archetype in relation to promoting his modeling and acting services, Bovinett has established himself as a professional who fulfills the advertising needs of various firms to attract multiple segments of the prospective purchasing public. Bovinett has thereby had significant success in

5

his field, as one who projects a diverse persona, which may be exploited by firms desiring to connote endorsement or otherwise project an association with the products and services of businesses that wish to profit from targeting their marketing to such segments of the purchasing public.

24.    Such firms contract with him to use one or more aspects of his well-established persona, including his 'look' and likeness, in their commercial activities and marketing efforts. Bovinett's persona includes, among other things, his likeness, his image, and his creative acting abilities underpinning his career. (A copy of one of Bovinett's composite photographs is attached hereto as Ex. "A")

25.    By carefully controlling and promoting the principled nature and integrity of his services and commercial on-camera and on-screen activities continuously over a long period of time, Bovinett has enhanced and maintained the value and goodwill of his image and persona and his ability to nurture an audience, and his identity has thereby become well and favorably known and established among his relevant professional audience and others with which he deals.

26.    A significant portion of Bovinett's income, and his income potential, is derived from his ability to lend his likeness visually to the commercial activities of those who wish to capitalize on the look and feel of his persona. As a business, the exploitation of and ability to control Bovinett's image and persona is an important economic component of his professional modeling and acting career, and have become an intrinsic and essential part of the valuable goodwill established to purchasers and others in Bovinett's persona and his commercial activities.

27.    At or about September 4, 2014, Bovinett was contacted by his Chicago based 'print' agent who first notified Bovinett of a casting opportunity to participate as talent for the creation of still photographs to be used by the home improvement enterprise HomeAdvisor (the "Shoot"). The still photographs to be created by a local Chicago photographer were to be retained by HomeAdvisor in its library database of images. (A copy of the "Casting Notice" email with the Shoot details is attached as Ex. "B" hereto.)

6

28.  Before agreeing to be photographed, Bovinett was assured by his print agent that the still photographs to be created depicting his likeness would be included in such a database for use by HomeAdvisor for 'print' purposes only, *i.e.*, in print ads or non- video-based electronic uses, *e.g.*, as a static image posted to a website, and not be used or incorporated by HomeAdvisor into any audio-visual, motion picture or video-based work, such as 'commercials' designed for broadcast or transmission via television and/or the internet, *i.e.*, a buyout for print purposes only.

29.  Additionally, the terms communicated to Bovinett through his print agent in defining the usage limitation, *i.e.*, "no broadcast," appeared routine based not only on Bovinett's past dealings with his print agent but on various other factors, including: (i) that Bovinett's print agent specialized in booking non-Union jobs limited to 'print' uses only, (ii) that Bovinett's print agent assured him that, in turn, HomeAdvisor personnel had given their assurances there would be no broadcast use or transmission of the still photographs to be created at the Shoot in any video, and (iii) that since Bovinett was a member of SAG-AFTRA, neither he nor any other of the Union-member talent participants in the Shoot, would have allowed themselves to be photographed unless HomeAdvisor had offered them a Union contract for the Shoot.

30.  In reliance on such assurances and understandings as fact, Bovinett consented to pose and be photographed by HomeAdvisor's chosen photographer at HomeAdvisor's instance and request. On October 8, 2014, Bovinett allowed the HomeAdvisor-retained photographer to capture images of Bovinett as still photographs.

31.  Nearly two weeks later, on or about October 20, 2014, and unknown to Bovinett, HomeAdvisor personnel, while repeatedly assuring Bovinett's print agent there would be no television broadcast or transmission of the still photographs as part of any video-based work, presented the agent with a document styled "Consent and Release" (the 'consent' form). (Ex. "C" hereto.) On information and belief, HomeAdvisor personnel then and there duped the print agent into signing the 'consent' form, as a condition to the Shoot talent being paid. (Exs. "D" and "G" hereto.)

32. Bovinett is informed and believes that HomeAdvisor, by communicating the promise to Bovinett's print agent that there was to be 'no broadcast' use of the still photographs from the Shoot, or incorporation of any such still images into any Commercials, while at the same time demanding the agent's signature to the consent form, the terms of which could be construed to the contrary, was intending to put the agent under duress, and thereby to coerce the agent into signing the 'consent' form under threat of non-payment and other harm to her business reputation, and otherwise by means not lawfully justified.

33. At no time relevant hereto, has Bovinett ever signed any voucher or contract consenting to his likeness to be captured in still photographs for incorporation into any video-based work for HomeAdvisor destined for broadcast or internet transmission use; nor has Bovinett authorized his print agent to do so or to hold herself out as having the authority to do so.

34. Bovinett is informed and believes the accused Commercials began to be created and tested from approximately the end of 2014 through mid-2015. Those early Commercials were aired and/or transmitted during mid-2015, and into early 2016, and through the present time.

35. That at all times relevant, upon information and belief, Hawthorne Direct participated directly with HomeAdvisor in creating the Commercials which unlawfully incorporate the still photographs of Bovinett, and have done so knowingly. (Grp. Ex. "H" p. 3)

36. At or about Spring 2016, Bovinett first learned that still photographic images of his likeness from the Shoot had been incorporated into video-based television Commercials, and were being broadcast on cable television, in violation of the limitations of his consent.

37. Upon learning of the violation, Bovinett notified his Union and his print agent that the still photographs created during the Shoot were being used in the HomeAdvisor Commercials without his permission. HomeAdvisor was also notified in 2016 and again in 2017 that all such reproductions and uses of his likeness and persona should cease, and otherwise be deleted from the Commercials. (See, Exs. "D", "F" and "G" hereto.)

38. Instead of making any effort to fix the problem, HomeAdvisor's refusal to cease and desist became more intransigent. Instead of stopping the offending conduct, HomeAdvisor

8

produced a copy of the purported 'consent' form not signed by Bovinett, nor authorized by him. (See, Exs. "D" and "E" hereto; and the 'consent' form Ex. "C" hereto.)

39. Notwithstanding such notices, during the remainder of 2016 through approximately early 2017, HomeAdvisor did not remove the unauthorized images from the Commercials and the broadcasts thereof. In fact, on information and belief, HomeAdvisor created scores of new Commercials incorporating Bovinett's likeness, and stepped up its broadcasts and transmissions of the Commercials.

40. Although Bovinett continued to seek relief from his Union, he was ultimately informed it would not entertain the matter primarily due to the non-Union nature of the Shoot.

41. Bovinett was never advised that the still photographs created at the Shoot were intended for use in Commercials, or that the usage stated in the Casting Notice, *i.e.*, 'Library of images...' (See, Exhibit "B: hereto), could conceivably connote an unlimited grant of all rights in Bovinett's likeness, identity and persona to HomeAdvisor for all uses, in all media in perpetuity.

42. Bovinett is informed and believes that (i) HomeAdvisor's use of the phrase "Library of images..." in the casting notice, coupled with (ii) the timing and sequence of the repeated assurances to the print agent that there would be 'no broadcast' use, (iii) but simultaneously accompanied by the effort to extort the agent's signature to the 'consent' form, were interconnected pieces of a scheme and device calculated to mask HomeAdvisor's intent to wrongfully obtain compelling still photographic images for use in its Commercials for exploitation via broadcast media, including as transmitted via the internet and social media platforms, without having to pay acting talent at a broadcast rate, and further to avoid having to pay Union mandated residual payments and fringes (*e.g.*, pension contributions and health insurance) for which HomeAdvisor would otherwise be obligated to assume.

43. Such efforts were intended by HomeAdvisor, and on information and belief together with Hawthorne Direct, to be used as a 'gotcha,' designed to put up barriers which are harmful and threatening to the talent, but which otherwise would have the desired effect of enabling HomeAdvisor to produce nearly cost-free, discounted, professionally-cast content for its

9

television Commercials and internet and social media use. Such content, on information and belief, boosted HomeAdvisor's traffic to its website(s) and otherwise enticed and attracted clicks, hits and views from home services consumers and contractor participants alike, all driven by the Commercials, and in turn to increase HomeAdvisor's financial gain.

44. Having wrongfully obtained the still photographs of Bovinett's likeness and image, Defendants went beyond Bovinett's consent by using his identity and likeness to falsely and misleadingly cause confusion or mistake in the minds of Bovinett's relevant purchasing public and others, suggesting, implying and sending the message as fact that Bovinett was willing to participate in being associated, affiliated or connected to the commercial activities of HomeAdvisor's products and services via use of the Commercials in any and all forms of television, including but not limited to as broadcast on cable and network television and as otherwise transmitted via the internet and social media, when in reality such 'facts' are not true.

45. By yielding to HomeAdvisor's and Hawthorne Direct's scheme to overreach, Bovinett would not only be suffering substantial financial loss and damage caused by his not receiving the true amounts of money to which he was entitled as a member of the Union, or otherwise, but he would be opening himself up to ongoing and perpetual professional embarrassment and humiliation for having been cheated by such chicanery, to be put in jeopardy with respect to his relationship with his Union, and otherwise be subject to the reputational and competitive harm he has meticulously sought to avoid throughout his career.

46. In fact, Bovinett is informed and believes that HomeAdvisor's ruse involving the 'consent' form was calculated to fraudulently obtain and fill it's so-called "Library" with images and content which, in turn, was intended and implemented by HomeAdvisor and others with whom it associated to create the Commercials, *e.g.*, Hawthorne Direct, for the unlawful competitive purpose of being able to control Bovinett's image to his detriment and ability to do so himself.

47. In addition to television broadcasts and web use of the Commercials, Defendants have embedded posts on and links to the Commercials on their respective websites, internet and

social media platforms to tout their expertise in creating such video works. Defendants threaten to permanently post the Commercials to their respective websites which, if acceded to by Bovinett, would add to the confusion and, further strip Bovinett of control over his identity and persona resulting in self-inflicted reputational and competitive harm which he is lawfully entitled to avoid.

48.  From and after January 2017, and in particular after Homeadvisor had been notified by Bovinett's print agent to cease and desist and otherwise takedown the offending images, HomeAdvisor never sought or received Bovinett's permission to continue to use Bovinett's likeness or identity or to imply his endorsement, association or connection with HomeAdvisor's commercial activities, services or policies as offered or engaged in by such Defendant.

49.  Had Bovinett been advised beforehand that use of the still photographs from the Shoot were intended to be used in television Commercials and otherwise for inclusion in video-based works destined for transmission via the internet and social media, much less in violation of his Union's rules, Bovinett would not have permitted HomeAdvisor and/or Hawthorne Direct to use his identity or likeness in connection with any of HomeAdvisor's broadcast Commercials or internet or social media transmissions, especially not those in direct conflict with Bovinett's relationship to his Union and/or to other valuable opportunities which are or may be impacted by the competitive disadvantage in which his appearance in the Commercials could exclude him in relation to similar types of industries for which he might otherwise be booked.

50.  Bovinett's identity, look, likeness and reputation are in effect his brand, and have been used and carefully cultivated by him continuously since approximately the year 2000, to distinguish his unique, highly valuable professional persona.

51.  Bovinett has used that brand in interstate commerce throughout the United States and internationally for many years to promote a wide variety of commercial entertainment activities and services, including via on-camera and on-screen modeling and acting.

52.  Because of his relevant public's prevalent knowledge of and regard for Bovinett's high professional standards, talent and reputation, Bovinett's services and activities have come to

be well and favorably known, and his relevant purchasing public, including a professional subset thereof, have also benefitted economically from their association with him via his modeling and acting engagements, and various commercial activities aforesaid.

53. As a result of such knowledge and regard of him, Bovinett's likeness, identity, image, look and persona have developed significant commercial value, particularly among his relevant purchasing public, in promoting himself as well as the products and services of others.

54. Bovinett has been damaged by Defendants, and is threatened to be so damaged in the future by such Defendants, whose unauthorized acts, omissions and concealments falsely suggest and imply Bovinett's endorsement of and/or association with HomeAdvisor's commercial activities via the television broadcast and internet and social media dissemination of the Commercials, and otherwise unfairly compete with Bovinett by means of deceptive trade practices designed to usurp otherwise potentially competitive opportunities which are threatened to be destroyed. The co-opting of Bovinett's identity, likeness and persona by Defendants, thereby damages Bovinett by diminishing the value of his goodwill and reputation and by threatening his potential to endorse, associate, affiliate and otherwise work in connection with other lucrative bookings.

55. Defendants' use and threatened use of Bovinett's identity, likeness and persona was unauthorized because HomeAdvisor did not seek or obtain Bovinett's consent to use his identity, likeness and persona in connection with the Commercials. (See, Exs. "D", "F" and "G" hereto.)

56. Defendants' use of Bovinett's likeness was and is willful because Defendants' use Bovinett's identity intentionally despite knowing that such use was and is not authorized.

57. Bovinett's right to control and use his likeness and image and persona has been damaged by Defendants' unauthorized use of his identity, likeness and persona.

58. At or about May 1, 2017, HomeAdvisor announced that the combined entity to be publicly traded as ANGI Homeservices, successor to HomeAdvisor's business, had on a pro forma basis generated an estimated $17 billion worth of home improvement jobs for more than 200,000 US-based paying service providers, including a substantial number in Illinois.

12

59. Bovinett is informed and believes that as of the filing of this action: (i) there are at least 54 video-based Commercials incorporating his photographic likeness, (ii) HomeAdvisor has blanketed the airwaves with those Commercials via all forms of television for approximately 148,620 runs, and (iii) there have been more than 5,000,000 additional airings and/or transmissions of such Commercials via the internet and social media; and all of which continue to increase in number.

60. Attached hereto are various B&W low-resolution screen grabs from some of the Commercials into which the still photographs of Bovinett have been unlawfully incorporated by HomeAdvisor and Hawthorne Direct, and as posted by them on the internet including on YouTube, and used outside the scope of Plaintiff's actual consent. (See, group Ex. "H" hereto.)

**COUNT I**
**(PLAINTIFF's CLAIM FOR FRAUDULENT INDUCEMENT**
**vs. HOMEADVISOR, and HAWTHORNE DIRECT)**

61. Plaintiff Bovinett realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

62. That at or about September 4, 2014, Bovinett received a casting call notice via email from his local 'print' agent in Chicago (the "Casting Notice"). (See, Ex. "B" hereto.) Bovinett's print agent was his point person for 'print'-only, non- video-related bookings.

63. The Casting Notice communicated basic terms for a modeling job, but did not specify any variance from the course of dealing between Bovinett and his print agent, *e.g.*, (i) that the still photographs to be created during the Shoot were actually intended to be incorporated into video works to be 'broadcast' over television, internet and social media platforms, or (ii) that there might be an issue with rule restrictions which might put Bovinett in jeopardy with his Union.

64. In fact, Bovinett was advised by his 'print' agent that she had been informed and assured by HomeAdvisor's and/or Hawthorne Direct's personnel that the booking for the Shoot

did not contemplate any use for inclusion in a video work (*e.g.*, a Commercial) for broadcast or any other video-based purpose. (identity to be furnished)[1]  (See, Ex. "G" hereto)

65.   At all times during the Shoot on October 8, 2014, and upon information and belief for some time prior thereto, Defendant(s) fraudulently concealed the fact they were intending to mislead Bovinett (and his agent) by tricking him into believing that the Shoot photographs were intended for 'print' use purposes only.

66.   At or about October 20, 2014, on information and belief, in furtherance of their scheme to defraud, HomeAdvisor personnel presented the print agent with a broadly drafted consent form (Ex. "C"), while simultaneously falsely assuring the agent that the still photographs to be created at the Shoot would not be used in any video or for any 'broadcast' purpose.

67.   Approximately Spring 2016, Bovinett learned for the first time since the Shoot, that HomeAdvisor had deceived and misled him, including duping his agent, regarding any limits on the usage of his image and persona, *i.e.*, to exclude any and all 'broadcast' usage thereof.

68.   During approximately April 2016 and through early 2017, Bovinett sought clarification and remedial action from both his print agent and the photographer who was present at the Shoot. (See, Exs. "D" and "G" hereto.)  In addition, since approximately early 2016, Bovinett sought to clarify whether his Union might exercise jurisdiction over the unauthorized uses of his image in the Commercials. All of those efforts were unsuccessful.

69.   At all times relevant herein, it was Defendants' intent that Bovinett rely on the fraudulent course of conduct, both the affirmative fraudulent statements made to Bovinett's print agent which, in turn, were repeated to him, and the fraudulent concealments pertaining to HomeAdvisor's and Hawthorne Direct's production, testing and airing of the Commercials.

---

[1]   The name(s) of Defendants' individual personnel who made the false and fraudulent statements are not presently accessible to Bovinett, such person(s) identity(s) being solely within the knowledge of Defendants. Plaintiff will provide as the Court may order, consistent with Fed.R.Civ.P. 9(b), the name(s) and identity(s) of the individual(s)  who made the false communications and engaged in the concealments, when discovered.

70. Defendants knew that their silence would induce Bovinett to not only render his services at the Shoot, but would lull him into the dark about use of the still photographs generally, enabling Defendants to capture Bovinett's likeness and persona, and to otherwise improperly incorporate and use same in the Commercials.

71. Bovinett reasonably relied on the course of fraudulent conduct engaged in by Defendants, including the misrepresentations made through Bovinett's print agent and the concealment of Defendants' true intentions for the use of the still photographs created at the Shoot, and Bovinett was tricked into performing services at the Shoot, and to commit and risk his goodwill and reputation in furtherance of what he believed to be the intended use of the still photographs.

72. Such fraud has directly and indirectly caused competitive damage and impact to Plaintiff, as more fully described herein.

73. By virtue of the foregoing premises, Defendants HomeAdvisor and, on information and belief Hawthorne Direct, have fraudulently induced Bovinett to act to his detriment, and such Defendants have done so with malice.

74. As a direct and proximate result of Defendants' acts and conduct, Bovinett has suffered and sustained tortious injury and damage.

75. Unless Defendants are stopped, Bovinett will continue to be so injured.

WHEREFORE, Plaintiff Bovinett prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have defrauded Bovinett; (b) that the Court enter an order which includes an award of damages in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT II
### (PLAINTIFF'S CLAIM FOR CONSTRUCTIVE FRAUD vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

76. Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

77. By virtue of the foregoing premises, Defendants' acts and conduct had the tendency to deceive Plaintiff, and he has thereby been constructively defrauded by Defendants.

78. As a direct and proximate result of the fraud, Plaintiff has been caused to and has thereby suffered and sustained economic and other injury and damages, which are ongoing.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have constructively defrauded Bovinett; (b) that the Court enter an order which includes an award of damages in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT III
### (PLAINTIFF'S CLAIM FOR VIOLATION OF THE LANHAM ACT § 43(a) vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

79. Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

80. Defendants' unauthorized use of Bovinett's identity, including his image, likeness, look and persona, in connection with the HomeAdvisor Commercials, was and threatens to continue to be a false or misleading representation of fact that falsely implies Bovinett's endorsement or approval of HomeAdvisor's activities and services via the Commercials.

81. HomeAdvisor's, Hawthorne Direct's, and prospectively ANGI Homeservices', unauthorized use of Bovinett's identity, likeness, look and persona:

(a) is likely to cause confusion, mistake or deception as to the affiliation, connection or association of HomeAdvisor's business activities with Bovinett or as to the origin, sponsorship or approval of HomeAdvisor's activities and services by Bovinett as depicted in the Commercials, in violation of Section 43(a) of the Lanham Act, 15 U.S .C. § 1125(a)(1)(A); and/or

(b) misrepresents the nature, characteristics or qualities of HomeAdvisor's business activities and services as depicted in the Commercials, in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a)(1)(B).

16

82.   Bovinett has been damaged by these acts, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83.   This case is an exceptional case pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have violated Lanham Act § 43(a); (b) that the Court enter an order which includes an award of damages, profits and fees in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

**COUNT IV**
**(PLAINTIFF'S CLAIM FOR STATUTORY CONSUMER FRAUD vs.**
**HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)**

84.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

85.   Defendants' aforesaid acts, practices and conduct constitute unfair and deceptive business practices and consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Compiled Statutes, 815 ILCS 505/2, § 2, *et seq.* (the "Act")

86.   HomeAdvisor's and Hawthorne Direct's conduct in violation of the Act is willful and outrageous, perpetrated by malicious motive or with reckless indifference to rights of others.

87.   As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiff is likely to continue to be substantially injured in his business, including his reputation, resulting in lost income and diminished goodwill.

88.   By reason of the foregoing, Plaintiff has been and will be injured in an amount not yet fully ascertained.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have violated the Illinois Consumer Fraud and Deceptive Business Practices Act; (b) that the Court enter an order which includes an award of damages, profits and fees in an amount

to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

**COUNT V**
**(PLAINTIFF'S CLAIM FOR STATUTORY DECEPTIVE TRADE PRACTICES**
**vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)**

89.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

90.    Such conduct and acts aforesaid by Defendants constitute unfair and deceptive trade practices within the meaning and intendment of the Illinois Compiled Statutes, Chapter 815, ¶ 510/2, including *inter alia* Sections § 2(2), § 2(3), § 2(5), § 2(9), and § 2(12) thereof.

91.    Plaintiff has no adequate remedy at law, and the aforesaid false and misleading descriptions and misrepresentations have caused, and are likely to continue to cause, Plaintiff economic injury and irreparable harm.

92.    Bovinett has been damaged by these acts.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have violated the Illinois Deceptive Trade Practices Act; (b) that the Court enter an order which includes an award of damages, profits and fees in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

**COUNT VI**
**(PLAINTIFF'S CLAIM FOR COMMON LAW UNFAIR COMPETITION vs.**
**HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)**

93.    Plaintiff realleges and reincorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

94.    Defendants' acts constitute unfair methods of competition, in that those acts have created a likelihood of confusion or misunderstanding as to Bovinett's endorsement or approval of HomeAdvisor's commercial activities and services, or created a likelihood of confusion as to HomeAdvisor's affiliation, connection or association with Bovinett.

18

95. HomeAdvisor's and Hawthorne Direct's acts, and prospectively those of ANGI Homeservices, constitute unfair competition under the common law of the state of Illinois.

96. Defendants' acts are willful and have damaged Bovinett.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have unfairly competed with Bovinett under Illinois common law; (b) that the Court enter an order which includes an award of damages and profits in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT VII
### (PLAINTIFF's CLAIM FOR BREACH OF CONTRACT vs. HOMEADVISOR, and ANGI HOMESERVICES)

97. Plaintiff Bovinett realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

98. At or about October 8, 2014, it was agreed by and between Bovinett and Defendant HomeAdvisor, at the specific request of HomeAdvisor, that Bovinett would furnish professional modeling services to Defendant, with respect to non- video-based, non-broadcast advertising to be produced by Defendant to promote and market HomeAdvisor's home improvement services.

99. The parties further agreed upon certain terms and conditions for the aforesaid services, including the photographer selected to create the still photographs, the duration of the Shoot, the price for Plaintiff to participate in the Shoot, and permissible uses for such photographs of Bovinett, namely for 'print', *i.e.*, non-video, non-broadcast use only.

100. The parties further agreed the still photographs of Bovinett to be created at the Shoot were not meant to be included in Commercials for television broadcast or internet or social media transmission as part of any audio-visual, video-based or motion picture work.

101. On or about October 8, 2014, Bovinett performed, completed and delivered the performance of modeling and acting services aforesaid pursuant to the terms of the parties' agreement, and all at the specific instance and request of HomeAdvisor.

102. That on or about April 12, 2016, HomeAdvisor's refusal to stop using Bovinett's likeness in its Commercials (See, Ex. "E" hereto), evidenced HomeAdvisor's clear intention to refuse to cease and desist using the still photographs depicting Bovinett's likeness and/or to negotiate an appropriate license, if possible, for such use of Bovinett's likeness and persona, including Union-based sums otherwise due (*e.g.*, residuals and fringes), for broadcast use of the Commercials via television and via the internet and social media, and constitutes HomeAdvisor's definitive and unequivocal repudiation of its contractual obligations to Bovinett.

103. Bovinett has performed all conditions, matters and things required by him to be performed under the parties bargain.

104. As a direct and proximate result of HomeAdvisor's breach(es), Bovinett has suffered and sustained damage, and there is due and owing to Bovinett from the Defendant HomeAdvisor therefor, sums of money for unauthorized uses of his likeness and persona, as herein alleged.

105. In addition, HomeAdvisor owes Bovinett sums of money for uses and lost opportunities which, but for the repudiation of the parties' agreement aforesaid by HomeAdvisor, would have accrued to the benefit of Bovinett after the filing of this Lawsuit.

106. Plaintiff is informed and believes that ANGI Homeservices has been organized and designed to succeed to the business of HomeAdvisor, and is thereby to be bound by the obligations of HomeAdvisor as successor-in-interest or otherwise as having assumed such obligations.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have breached the agreement with Bovinett; (b) that the Court enter an order which includes an award of damages, in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT VIII
### (PLAINTIFF'S CLAIM FOR CONTRACT IMPLIED-IN-FACT RELIEF vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

107.  Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

108.  Defendants' acts and conduct alleged herein demonstrate their request to Bovinett to perform modeling and acting services to be captured in still photographs only, and he did so.

109.  That the parties understood and assented to the bargain that there was to be no use of such still photographs in any form of video-based media, nor for any exploitation via any means of television broadcast including transmission via the internet and social media.

110.  HomeAdvisor's and Hawthorne Direct's acts, and prospectively those of ANGI Homeservices, constitute a tardy and unlawful attempt to reject and disavow such assent.

111.  That Defendants acts and conduct violate an implied-in-fact bargain.

112.  Such acts and conduct by Defendants give rise to a right in Bovinett which may be enforced by the Court's imposition of an implied-in-fact remedy.

113.  Defendants' acts are willful and have damaged Bovinett.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that the Court fashion implied-in-fact relief against Defendants for their violations; (b) that the Court enter an order which includes an award of damages in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT IX
### (PLAINTIFF'S CLAIM FOR CONTRACT IMPLIED-IN-LAW RELIEF vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

114.  Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

115.  Defendants' acts and conduct alleged herein demonstrate their request to Bovinett to perform modeling and acting services to be captured in still photographs only, and he did so.

116. That the parties understood and assented to the bargain that there was to be no use of such still photographs in any form of video-based media, nor for any exploitation via any means of television broadcast including transmission via the internet and social media.

117. HomeAdvisor's and Hawthorne Direct's acts, and prospectively those of ANGI Homeservices, constitutes a tardy and unlawful attempt to unjustly enrich themselves.

118. That Defendants acts and conduct violate the implied-in-law bargain.

119. Such acts and conduct by Defendants give rise to a right in Bovinett which may be enforced by the Court's imposition of a quasi-contractual, implied-in-law remedy.

120. Defendants' acts are willful and have damaged Bovinett.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that the Court fashion implied-in-law relief against Defendants for their violations; (b) that the Court enter an order which includes an award of damages in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT X
### (PLAINTIFF's CLAIM FOR UNJUST ENRICHMENT vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

121. Plaintiff Bovinett realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

122. Defendants' acts and conduct evidence their unjust retention of, and/or intent to retain, a benefit to the Plaintiff's detriment.

123. By virtue of the foregoing premises, Defendants have and will violate fundamental principles of justice, equity and good conscience, and have done so with malice.

124. As a direct and proximate result of Defendants' acts and conduct, Bovinett has suffered injury and damage.

125. Unless Defendants are stopped, Bovinett will continue to be so injured.

126. Defendants' acts are willful and have damaged Bovinett.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have been unjustly enriched to Plaintiff's detriment; (b) that the Court enter an order which includes an award of damages and profits in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

## COUNT XI
## (PLAINTIFF'S CLAIM FOR RESCISSION AND RESTITUTION vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

127.  Plaintiff Bovinett realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

128.  Defendants' wrongful acts and conduct in procuring the print agent's signature to the 'consent' form, give rise to a right of rescission in Plaintiff.[2]

129.  By virtue of the foregoing premises, the Court has the power to restore to the Plaintiff that which was and will be taken from him by Defendants who have acted inequitably, and have done so with malice.

130.  As a direct and proximate result of Defendants' acts and conduct, Bovinett has suffered injury and damage.

131.  Unless Defendants are stopped, Bovinett will continue to be so injured.

132.  Defendants' acts are willful and have damaged Bovinett.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that Defendants be found to have engaged in conduct remediable by rescission and restitution; (b) that the Court enter an order which includes an award of damages, in an amount to be determined, but not less than $2.8 million; and (c) for relief as more fully set forth herein including that the purported 'Consent and Release' unlawfully procured by Defendants be rescinded, (d) plus costs.

---

[2] Plaintiff does not concede the 'consent' form is a valid and binding instrument. But, to the extent same could be found, even in part, Plaintiff seeks relief under the Court's rescissionary power as an alternative to and without admitting the document has any validity.

23

## COUNT XII
### (PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT vs. HOMEADVISOR, HAWTHORNE DIRECT, and ANGI HOMESERVICES)

133. Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

134. There is a real and substantial controversy between Plaintiff Bovinett and Defendants HomeAdvisor, Hawthorne Direct and prospectively ANGI Homeservices.

135. That such controversy exists between Plaintiff and Defendants over the matters at issue as described and alleged herein.

136. That pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, this Court is empowered to render a declaratory judgment to determine certain rights among the parties.

137. Plaintiff seeks this Court's declaration:

(a) That he has duly performed all of the services and obligations required by him to be performed under the bargain he made for the Shoot;

(b) That the 'consent' form purported to be made on Plaintiff's behalf is unlawful as violative of public policy and therefor void or voidable as an illegal attempt by Defendants to exculpate their own intentional acts;

(c) That the 'consent' form purported to be made on Plaintiff's behalf was void *ab initio*; as having been procured by fraud;

(d) That the 'consent' form purported to be made on Plaintiff's behalf by his print agent is void for lack of authority;

(e) That the term "Library" as used in the context of the Casting Notice, is vague, imprecise and does not connote Plaintiff's general abandonment to Defendants of, or consent to grant an unlimited license to Defendants to use still photographs of, his likeness, look and persona for all purposes, in all media in perpetuity;

(f) That the term "buyout" as used by the print agent in context of the circumstances surrounding the Shoot, is vague, imprecise and does not connote Plaintiff's general

abandonment to Defendants of, or consent to grant an unlimited license to Defendants to use still photographs of, his image, likeness and persona for all purposes, in all media in perpetuity.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and each of them jointly and severally with Doe Defendants who may be liable: (a) that the Court fashion declaratory relief in favor of Bovinett and against Defendants as appropriate; (b) that the Court enter an order which includes an award of damages, in an amount to be determined, but not less than $2.8 million; and (c) for equitable and other relief as more fully set forth herein, (d) plus costs.

**COUNT XIII**
**(PLAINTIFF'S CLAIM FOR AN INJUNCTION vs. HOMEADVISOR,**
**HAWTHORNE DIRECT, and ANGI HOMESERVICES)**

138.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and by virtue of the premises set forth in this Complaint alleges:

139.    By reason of Defendants' acts and conduct aforesaid, Bovinett has suffered, and will continue to suffer, damage to his profession, reputation, and goodwill, unless the court protects Plaintiff from any unauthorized use of his proprietary identity, and otherwise against violations and wrongful conduct alleged.

140.    Bovinett has over time carefully developed, established, promoted, and preserved the integrity of his identity, likeness and persona and the professional services associated therewith, but such integrity will suffer if Plaintiff is unable to protect these substantial personal and proprietary rights. Money damages alone cannot adequately compensate Bovinett for the resulting loss of goodwill established by him in his profession and with his relevant purchasing public and others.

141.    Defendants continue to do, and to threaten to do, the acts complained of by Plaintiff and, unless enjoined by the Court, Defendants will continue to do so, to Plaintiff's irreparable damage.

142. The harm to Defendants of being ordered to cease their activities with respect to the unauthorized use of Plaintiff's likeness is not sufficient to justify the ongoing damage to Plaintiff of allowing Defendants to continue.

143. There is a strong possibility Plaintiff will prevail on the merits of this case. Furthermore, it would be extremely difficult, if not impossible, to ascertain the amount of compensation which would afford Bovinett adequate relief for Defendant(s)' acts. Therefore, Plaintiff's remedy at law is not adequate to compensate for such injuries.

144. Pursuant to 15 U.S.C. §§ 1116 and 1118, and 815 ILCS ¶ 510/3, § 3, Bovinett seeks a hearing and the issuance by the Court, following such hearing, of a preliminary and ultimately permanent injunction to require Defendant(s), *inter alia*, to:

(i)   cease using or taking any further steps to use reproductions of Bovinett's likeness and image in any manner, in the Commercials or otherwise, and all other materials of any kind which are identified or associated with Bovinett, in video-based broadcast media, without his prior written authorization;

(ii)   cease distributing or taking any further steps to distribute the fraudulently obtained images of Bovinett which unlawfully use the likeness, identity, and persona of Plaintiff, and all other materials of any kind which are or are threatened to be improperly identified or associated with Defendant(s)' Commercials without his prior written authorization;

(iii)   turn over to Plaintiff or destroy all copies of any Commercials or portions thereof, scans, prints, displays, website data, digital files, and all other related materials of any kind wherein the Commercials and content thereof are identified with and/or credited to Defendants or some other third person or firm, and all without Plaintiff's prior written approval; and

(iv)   cease making any representations, statements and/or suggestions that the manner in which Plaintiff's likeness and image are reproduced in the Commercials, is in

any way approved, endorsed, or licensed by Plaintiff, or identified with Plaintiff, in any manner whatsoever, without his prior written consent.

**COUNT XIV**
**(PLAINTIFF'S CLAIM FOR LIABILITY vs. DEFENDANTS DOE I–V)**

145. Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint, and in the alternative to each other count in this Complaint alleges:

146. On information and belief, one or more individual(s), firm(s), affiliate(s) or contractor(s), acting in concert with HomeAdvisor and/or Hawthorne Direct, and as planned in the future ANGI Homeservices, was or will be a conscious, active and dominant force causing or contributing to cause, and which resulted in, or will result in the unlawful acts and violations herein alleged.

147. That alternatively, or in addition to other tortfeasors and wrongdoers above alleged, on information and belief, there are various persons and firms who financially benefitted from and/or retained rights to exercise control over such unlawful activities as are alleged above, or will do so in the future, and are therefore vicariously liable for such acts and violations.

148. On information and belief, those individuals, firms, affiliates and/or contractors above referenced who personally or directly contributed to, authorized and/or participated in violating Bovinett's rights and infringing upon Bovinett's likeness, identity and persona, and his exclusive rights therein and otherwise, violated his rights by the various means aforesaid.

149. That such tortious acts herein alleged against such Doe Defendant(s) were and are for their own individual gain and benefit, as well as the gain and benefit of their firms, affiliates or contractors, and infringe upon Bovinett's exclusive rights in his identity and persona.

150. That by virtue of the acts hereinabove alleged, Defendants Doe I through Doe V violated Bovinett's rights, and otherwise violated his persona as heretofore alleged, and he has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

WHEREFORE, Plaintiff prays for judgment in his favor and against Doe Defendants, and each of them jointly and severally together with such named Defendants who may be liable:

27

(a) that Bovinett be found to be damaged and irreparably harmed; (b) that the Court enter an order which includes an award of damages, in an amount to be determined, but not less than $2.8 million; and (c) for equitable, and other relief as more fully set forth herein, (d) plus costs.

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Dated:   August  _28th_  2017

RAY ALAN BOVINETT, Plaintiff

By:   _____ /s/  Mark Barinholtz _____
                    Attorney

Mark Barinholtz, Esq.
MARK H. BARINHOLTZ, P.C.
Attorney for Plaintiff
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121