# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAY ALAN BOVINETT,<br><br>    Plaintiff,<br><br>  v.<br><br>HOMEADVISOR, INC., ANGI HOMESERVICES, INC., and HAWTHORNE DIRECT, LLC,<br><br>    Defendants. | Case No. 17 C 6229<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendants HomeAdvisor, Inc. ("HomeAdvisor"), ANGI Homeservices, Inc. ("ANGI"), and Hawthorne Direct, LLC ("Hawthorne"), bring separate Motions to Dismiss for failure to state a claim. ANGI and Hawthorne also move to dismiss for lack of personal jurisdiction. For the reasons stated herein, HomeAdvisor's Motion is granted in full, and because ANGI's and Hawthorne's Rule 12(b)(2) Motions are both granted, those parties' Rule 12(b)(6) arguments are moot.

## I. BACKGROUND

Bovinett is a model and actor. (Complaint ¶ 52, ECF No. 1.) In September 2014, his Chicago-based agent contacted him about participating in a photoshoot for HomeAdvisor. Bovinett appeared for the shoot with HomeAdvisor's chosen photographer on October 8, 2014, and HomeAdvisor has retained

and used the photos from that session ever since. The problem here is how HomeAdvisor used those photos. Bovinett alleges that before he appeared for the shoot, some unidentified person from HomeAdvisor assured his agent that the photos would be used in static form only (*i.e.*, either in print media or as a static image posted on a website), and would not be incorporated into any video. (*Id.* ¶¶ 27-30.) Two weeks after the shoot, HomeAdvisor personnel presented Bovinett's agent with a consent and release form stating that Bovinett agreed to convey his rights in the photos to HomeAdvisor for use "in advertising, promotions, and any other use, and in any media, desired by HomeAdvisor in its sole discretion, including but not limited to display on the HomeAdvisor website, in television commercials, and on the Internet." (*Id.* ¶¶ 31-32; Consent and Release Form, Ex. C to Compl., ECF No. 1-1.) According to the Complaint, HomeAdvisor's personnel assured Bovinett's agent that notwithstanding the consent and release language, HomeAdvisor would not put the photos to use in any video format. The agent signed the consent and release on Bovinett's behalf. (Compl. ¶¶ 31-32.) Over roughly the next year, HomeAdvisor worked with Hawthorne to create TV commercials that incorporated Bovinett's photo. Those commercials began airing in mid-2015 and continue to air today. (*Id.* ¶¶ 34-35.) In spring 2017, a newly

incorporated entity called ANGI was formed to consummate a merger between HomeAdvisor and non-party entity Angie's List. (*Id.* ¶ 12.) HomeAdvisor announced soon thereafter that ANGI would be the successor to HomeAdvisor's business. (*Id.* ¶ 58.) In August, 2017, Bovinett brought this suit against HomeAdvisor, ANGI, and Hawthorne, alleging fourteen causes of action ranging from Lanham Act violations to various forms of fraud. (*See, generally,* Compl.)

## II. <u>DISCUSSION</u>

Each Defendant now brings its own Motion to Dismiss some or all of the counts against it. The Court first addresses Hawthorne's and ANGI's Motions to Dismiss for lack of personal jurisdiction before turning to HomeAdvisor's Motion to Dismiss for failure to state a claim.

### A. Hawthorne's and ANGI's 12(b)(2) Motions

The plaintiff bears the burden of providing sufficient evidence to establish a *prima facie* case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). Personal jurisdiction may be "general" or "specific." General jurisdiction lies only where the defendant has "continuous and systematic" contacts with the forum state. *See, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). In all but the most exceptional cases,

general jurisdiction over a corporation is limited to its place of incorporation and/or principal place of business. *Leibovitch v. Islamic Republic of Iran,* 188 F. Supp. 3d 734, 746 (N.D. Ill. 2016) (citing *Daimler AG v. Bauman,* 134 S.Ct. 746, 761 n.19 (2014)), *aff'd,* 852 F.3d 687 (7th Cir. 2017). Defendants subject to general jurisdiction may be haled into court "for any alleged wrong . . . no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 426 (7th Cir. 2010) (citation omitted).

In contrast, "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). In either case, the plaintiff must also demonstrate that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 320 (1945).

### 1. Hawthorne's 12(b)(2) Motion

No general jurisdiction exists over Hawthorne here. Bovinett alleges that Hawthorne is an Iowa limited liability

company with its principal place of business in Fairfield, Iowa. (Compl. ¶ 13.) Hawthorn responds that its principal place of business is actually Los Angeles, California, but this does not matter. In either case, Hawthorne is neither headquartered nor incorporated in this state, so this Court may not exert general jurisdiction over it. *Bauman,* 134 S.Ct. at 761 n.19.

As for specific jurisdiction, Bovinett advances three theories for Hawthorne's sufficient contacts with this forum, namely: (1) Hawthorne's purported business activities in Illinois; (2) alleged tortious acts undertaken by Hawthorne and targeted at Bovinett in Illinois; and (3) a conspiracy/agency theory.

In his Complaint, Bovinett recites a catalogue of business activities that he attributes to the three Defendants. (*See,* Compl. ¶ 15.) He does not identify specifically which of these activities Hawthorne allegedly undertook, however, and he never connects any of the activities to the events allegedly giving rise to his injury. *See, Tamburo,* 601 F.3d at 702 (observing that specific jurisdiction may not lie unless the alleged injury arises out of the defendant's forum-related activities). Bovinett's failure to connect these dots with plausible allegations dooms his first theory for specific jurisdiction over Hawthorne.

Next, Bovinett argues that Hawthorne is susceptible to specific jurisdiction because it committed torts targeted at Illinois. The key question under this tort theory is whether the defendant "purposefully directed" its activities at the forum state. *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). In other words, Hawthorne is not subject to specific jurisdiction under this theory unless it engaged in (1) intentional conduct (2) expressly aimed at Illinois (3) with knowledge that Bovinett would be injured in Illinois. *See, id.* at 674-75. First, Bovinett did not clearly allege what activities (tortious or otherwise) Hawthorne undertook that were "expressly aimed" at Illinois. But even if he had, still fatal to this second theory is Bovinett's failure to allege facts showing that Hawthorne knew Bovinett was in Illinois or that he would be injured here. His Complaint uses the right jargon, alleging that Defendants collectively "aimed and targeted their tortious acts and conduct at Bovinett in Illinois, knowing that they would cause harm to Bovinett within the state of Illinois where Bovinett resides and conducts business." (Compl. ¶ 16.) But without alleging any facts to lend some credence to these allegations, Bovinett falls short of carrying his burden. *See, N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014).

Finally, Bovinett argues for specific jurisdiction on a conspiracy/agency theory. The conspiracy hook will not work here, as the Seventh Circuit has disclaimed it under Illinois law. *See, Smith v. Jefferson Cty. Bd. of Educ.*, 378 F. App'x 582, 585-86 (7th Cir. 2010). True, the Illinois long-arm statute recognizes the *agency* theory, *see, Hang Glide USA, LLC v. Coastal Aviation Maint., LLC,* No. 16 C 6905, 2017 WL 1430617, at *4 (N.D. Ill. Apr. 18, 2017) (citing 735 ILCS 5/2-209(a)), but Bovinett has not alleged enough to avail himself of it. His Complaint fails to allege plausibly either that Hawthorne acted through any agent or that Hawthorne acted on behalf of the other Defendants. All Bovinett claims Hawthorn did was create the allegedly tortious commercials, and he does not allege that Hawthorne conducted any of this work in Illinois. (Compl. ¶ 35.) Because Hawthorne is not alleged to have played any role in the photoshoot or subsequent creation or presentation of the consent and release agreement, Hawthorne's only plausible, jurisdictionally relevant connection to Bovinett would be if Hawthorne created the allegedly tortious commercials with "an intent to affect an Illinois interest." *Edelson v. Ch'ien,* 352 F. Supp. 2d 861, 867 (N.D. Ill. 2005) (citing *Heritage House Rests., Inc. v. Continental Funding Grp., Inc.,* 906 F.2d 276, 282 (7th Cir. 1990)). But, again, nowhere in the Complaint does

Bovinett plausibly allege that Hawthorne had reason to know that he was an Illinois resident. Bovinett's third theory fails.

Bovinett has failed to provide sufficient evidence to establish a *prima facie* case for personal jurisdiction over Hawthorne. *See, RAR, Inc.,* 107 F.3d at 1276. The Court accordingly grants Hawthorne's 12(b)(2) Motion and dismisses all claims against Hawthorne without prejudice.

### *2. ANGI's 12(b)(2) Motion*

ANGI argues repeatedly amid the flurry of filings at bar that because it was not incorporated until 2017—well after the events giving rise to Bovinett's claims—it cannot have had any jurisdictionally relevant contact with Illinois and so cannot be subject to personal jurisdiction here. In principle, at least, ANGI is mistaken. Its argument ignores the rule that "[i]n the corporate successor context, the successor corporation has chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor. Therefore, it can be expected to be haled into the same courts as its predecessor." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 784 (7th Cir. 2003). This rule only applies, however, if forum law would hold the successor liable for the actions of its predecessor. *Id.* at 783-84 (citation omitted).

In Illinois, it is a well settled rule that "a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster,* 688 N.E.2d 1172, 1175 (Ill. 1997) (citations omitted). There are four exceptions to this rule:

> (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Mamacita, Inc. v. Colborne Acquisition Co., LLC.,* No. 10 C 6861, 2011 WL 881654, at *3 (N.D. Ill. Mar. 11, 2011) (citing *Vernon,* 688 N.E.3d at 1175-76). Given the state of Bovinett's Complaint at present, however, none of these exceptions applies to render ANGI liable for HomeAdvisor's actions. Bovinett has not alleged any express agreement between these Defendants, and the allegations he does include fall short of establishing an implied agreement. In all, Bovinett alleges that "ANGI . . . has succeeded to, or is in the process of succeeding to, the business of HomeAdvisor, through a merger." (Compl. ¶ 11). This language is similar to the allegation in *Vernon,* where the plaintiff claimed that because the defendant has succeed[ed] to the assets, rights, and obligations" of his father's business, that defendant should be liable under warranties that business

had issued.  The dissent agreed, believing that the plaintiff sufficiently alleged successor liability under the implied agreement exception, but the majority rejected that interpretation.  *Mamacita, Inc.,* 2011 WL 881654, at *3 (discussing *Vernon,* 688 N.E.2d at 1174).  If the allegations in *Vernon* did not suffice, Bovinett's nearly identical allegations cannot either.

The second successor liability exception is the so-called *de facto* merger exception.  "In determining whether a *de facto* merger has occurred, the most important factor to consider is the identity of ownership of the new and former corporation." *Steel Co. v. Morgan Marshall Indus., Inc.,* 662 N.E.2d 595, 600 (Ill. App. Ct. 1996).  Bovinett has not alleged anything here regarding the ownership of either HomeAdvisor or ANGI, so the Court cannot say he has carried his burden as to exception number two.

This shortcoming dooms Bovinett's chances under the third, "mere continuation," exception as well.  Illinois courts have emphasized that the key element to this exception is "the identity of officers, directors, and stock between the selling and purchasing corporations." *Diguilio v. Goss Int'l Corp.,* 906 N.E.2d 1268, 1277 (Ill. App. Ct. 2009) (citing *Vernon,* 688 N.E.2d at 1172) (citations omitted).

Finally, Bovinett does not allege, as is required under the fourth exception, that the ANGI/HomeAdvisor merger was fraudulent. Illinois courts typically consider the Uniform Fraudulent Trade Act's "badges of fraud" in determining whether a plaintiff has stated a claim under this exception. *Mamacita, Inc.*, 2011 WL 881654, at *5 (citing 740 ILCS 106/5(b)(1)-(11)). Bovinett has not alleged the presence of any of these badges, which include indicia such as "the transfer was disclosed or concealed" and "the transfer occurred shortly before or shortly after a substantial debt was incurred." *Id.*

It might well be that ANGI is HomeAdvisor's corporate successor and thus plausibly susceptible to this Court's personal jurisdiction. But Bovinett has failed to carry his burden of providing sufficient evidence to establish a *prima facie* case of successor liability, so ANGI's 12(b)(2) Motion must be granted.

### B. HomeAdvisor's 12(b)(6) Motion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (citation omitted) (internal quotation marks omitted). Because the Court has already granted Hawthorne's and ANGI's 12(b)(2) Motions, their 12(b)(6) Motions are moot and warrant no consideration here. The Court thus turns to HomeAdvisor's 12(b)(6) Motion and considers each count in turn.

### *1. Count I – Fraudulent Inducement*

In Count I, Bovinett objects to two alleged misrepresentations: First, the pre-shoot representation by "HomeAdvisor and/or Hawthorne" to his agent that the shoot did not contemplate any videographic use of the photos (Compl. ¶ 64), and second, the post-shoot representation by HomeAdvisor that, contrary to the express language of the consent and release form, the photographs would not be used in any video format.

The Court agrees with HomeAdvisor's contention that Bovinett's "fraudulent inducement" claim is really a claim for promissory fraud. Bovinett's beef boils down to this: HomeAdvisor promised they would never incorporate his photos

into any video; later, they did. Claims like this one that involve a false statement of intent regarding future conduct are generally not actionable under Illinois law. *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) (characterizing promissory fraud). However, such claims can survive the pleading stage if the plaintiff shows they are "particularly egregious" or are part of a larger scheme. *See, Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 988 (N.D. Ill. 2006) (citing *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995)). None of the allegations shows that the complained-of misrepresentations are particularly egregious. *See, e.g., Int'l Star Registry,* 451 F. Supp. 2d at 988 (finding alleged misrepresentation regarding how frequently defendant intended to run plaintiff's advertisements did not qualify as particularly egregious). The question thus becomes whether Bovinett has alleged these statements were part of a larger scheme, *i.e.,* a "pattern of fraudulent statements." *Martinez-Cruz v. N. Cent. Coll.,* No. 13-CV-4328, 2013 WL 6498761, at *4 (N.D. Ill. Dec. 11, 2013) (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC,* 664 F.3d 131, 136 (7th Cir. 2011)).

Bovinett has alleged no such thing. True, he alleges two different statements to the same effect (*i.e.,* the non-video use

of the photos), and at first blush these statements could together form the "pattern" Bovinett needs to allege to sustain his claim. *But see, LeDonne v. Axa Equitable Life Ins. Co.,* 411 F. Supp. 2d 957, 962 (N.D. Ill. 2006) (stating that an oral promise issued on two occasions is not sufficient to plead fraudulent intent where plaintiff fails to claim defendants engaged in other acts of trickery or perpetrated this type of fraud as a regular practice or on any grand scale), *superseded by statute on other grounds,* 735 ILCS 5/2-2201, *as recognized in Vertex Ref., NV, LLC v. Nat'l Union Fire Ins., Co.,* No. 16 CV 3498, 2017 WL 977000, at *6 (N.D. Ill. Mar. 14, 2017). But his "pattern" is cut in two by his deficient allegations as to the first statement. Rule 9(b) of the Federal Rule of Civil Procedure requires that allegations of fraud must be stated with specificity. FED. R. CIV. P. 9(b). "The Rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Borich v. BP, P.L.C.,* 904 F. Supp. 2d 855, 862 (N.D. Ill. 2012) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994)). "It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against

spurious fraud claims." *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 748-49 (7th Cir. 2005). Here, Bovinett fails to allege, as required under Rule 9, the time and place of the first alleged misstatement, as well as the method by which it was communicated. Indeed, Bovinett declined even to settle on whom, exactly, made this first statement (whether a representative of HomeAdvisor "and/or" Hawthorne). A "careful pretrial investigation" as required by Rule 9(b) would have clarified his allegations, and without that clarification this claim cannot survive. *Fidelity*, 412 F.3d at 748-49.

The Court adds that Bovinett's first count is somewhat amorphous, and might be premised upon fraudulent concealment as well. (*See,* Compl. ¶ 65 ("Defendant(s) fraudulently concealed the fact they were intending to mislead Bovinett (and his agent) by tricking him . . . .").) Regardless, this claim still fails. A plaintiff pleading fraudulent concealment must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff. *Cohen v. Am. Sec. Ins. Co.,* 735 F.3d 601, 613 (7th Cir. 2013) (citations omitted) (applying Illinois law). Such a duty may arise from a fiduciary or confidential relationship or from another situation that places the defendant "in a position of influence and superiority" over

the plaintiff.  *Id.* (citations omitted).  HomeAdvisor is correct that Bovinett did not allege facts suggesting any special relationship at play here.  HomeAdvisor's Motion to Dismiss is granted as to Count I.

### 2. *Count II – Constructive Fraud*

A plaintiff alleging constructive fraud must allege the existence of a confidential or fiduciary relationship.  *See, Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800 (7th Cir. 2008).  But as already discussed as to Count I, Bovinett has failed to allege facts suggesting such a relationship existed here between him and HomeAdvisor.  Count II is dismissed.

### 3. *Counts III-VI – Consumer Confusion Claims*

In Counts III-VI, Bovinett brings claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)-(B), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.,* and for unfair competition under common law. Although most of these counts can be knocked out in one fell swoop, we must first pause a moment on Count III.  That count asserts two discrete claims under the Lanham Act for false endorsement and false advertising respectively.  15 U.S.C. § 1125(a)(1)(A)-(B).  It is the false advertising claim that demands some brief attention here.  A plaintiff bringing a

Lanham Act false advertising claim must allege, among other things, a false statement of fact by the defendant in a commercial advertisement about its own or another's product. *See Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir. 1999). Here, Bovinett never alleges any such false statement, so his false advertising claim cannot pass muster. That detour handled, we move on to the balance of Count III as well as Counts IV-VI.

All of these claims fail for the same reason. Each turns upon allegations that the Defendants' use of Bovinett's image creates a likelihood of public confusion as to Bovinett's affiliation, sponsorship, or approval of Defendants and/or their activities and services. *See, e.g., Hart v. Amazon.com, Inc.,* 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016) (stating likelihood of confusion is a key element in Lanham Act false endorsement claims), *aff'd,* 845 F.3d 802 (7th Cir. 2017); *Thacker v. Menard, Inc.,* 105 F.3d 382, 386 (7th Cir. 1997) (stating same for claims under the Illinois Consumer Fraud and Deceptive Business Practices Act); *Microsoft Corp. v. Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950, at *9 (N.D. Ill. Jan. 22, 2001) (stating same for Illinois common law unfair competition claims and claims under the Illinois Uniform Deceptive Trade Practices Act). Yet Bovinett admits he agreed to pose as a

model for HomeAdvisor's photoshoot with the knowledge that HomeAdvisor intended to use those photos in advertising. His qualm is thus not over whether he agreed to be affiliated with or signal his public approval for HomeAdvisor—he did both—he simply objects that HomeAdvisor unlawfully incorporated that affiliation into a video format. Put simply, the allegedly tortious commercials might well leave viewers with the impression that Bovinett endorses HomeAdvisor. But that impression is accurate, at least as of the time Bovinett sold his rights in these photos, so the impression cannot *confuse* anyone. Bovinett fails to allege facts showing a likelihood of consumer confusion, dooming Counts III-VI. Each is dismissed with prejudice.

### *5. Count XIII – Injunction*

Bovinett may seek an injunction where he believes he is entitled to one, but "an injunction is a remedy, not a claim or cause of action." *Murfin v. St. Mary's Good Samaritan, Inc.*, No. 12-CV-1077-WDS, 2012 WL 6611023, at *4 (S.D. Ill. Dec. 19, 2012). Count XIII is dismissed with prejudice for failure to state a claim upon which relief may be granted.

### *6. Count XIV – For Liability Against John Doe Defendants*

For two different reasons, the Court dismisses this count as well. The Court agrees with the decision from its sister

district that plaintiffs should not include Doe defendants in their complaints without giving the court some indication of who these unnamed defendants are and what they are alleged to have done. *See, Dedalis v. Brown Cty. Jail,* No. 15-CV-1543, 2016 WL 792425, at *2 (E.D. Wis. Feb. 26, 2016). "While it is permissible for [a] plaintiff to proceed without knowing the proper name of a Doe defendant, he must connect each Doe defendant with particular actions or inactions so that [the court] can determine whether [the] plaintiff states a claim against that unnamed person." *Id.* Bovinett does no such thing here. He simply asserts that "one or more individual[s], firm(s), affiliate(s), or contractor(s)" acted in concert with one or multiple Defendants to perpetrate some or all of the complained-of torts. This ultra-broad and hypothetical claim has no legs to stand on as Bovinett has not given the Court enough to judge its merits.

Secondly, because the Court has now dismissed Bovinett's Lanham Act claims in Count III, there is no longer federal question jurisdiction here. The Court now sits in diversity jurisdiction, and in such circumstances John Doe defendants are not permitted because their anonymity makes it impossible to be sure of the parties' diversity. *See, Howell by Goerdt v. Tribune Entm't Co.,* 106 F.3d 215, 218 (7th Cir. 1997).

Count XIV is dismissed with prejudice unless Bovinett first reestablishes federal question jurisdiction by amending his Complaint.

### III. CONCLUSION

For the reasons stated herein, Hawthorne's Rule 12(b)(2) Motion [ECF No. 21] and ANGI's Rule 12(b)(2) Motion [ECF No. 19] are granted. With respect to HomeAdvisor's Rule 12(b)(6) Motion [ECF Nos. 17], the Court dismisses Counts I and II without prejudice and dismisses Counts III-VI and XIII with prejudice. The Court also dismisses Count XIV with prejudice unless Bovinett first reestablishes federal question jurisdiction by amending his Complaint, in which case Bovinett may replead Count XIV. ANGI's and Hawthorne's Rule 12(b)(6) arguments are denied as moot. Bovinett shall file an Amended Complaint by March 30, 2018, or else the counts now dismissed without prejudice will be dismissed with prejudice and Bovinett will stand on his current Complaint.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 3/9/2018