IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAY ALAN BOVINETT,

                Plaintiff,

     v.

HOMEADVISOR, INC., ANGI
HOMESERVICES, INC., and
HAWTHORNE DIRECT, LLC,

           Defendants.

Case No. 17 C 6229

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff, a model and an actor, has sued HomeAdvisor, Inc. ("HomeAdvisor"), its successor, Angi Home Services, Inc. ("Angi"), and Hawthorne Direct, LLC ("Hawthorne") (collectively, the "Defendants"), alleging a myriad of claims ranging from Lanham Act violations to various forms of fraud. The gravamen of his Complaint alleges that Defendants used his image in video-footage commercials after assuring his agent that the image would only be used in a static form. Defendants responded by moving to dismiss Angi and Hawthorne under Rule 12(b)(2) for lack of jurisdiction and HomeAdvisor under Rule 12(b)(6) for failure to state a claim. The Court granted the motions in full, dismissing Angi and Hawthorne for lack of jurisdiction and HomeAdvisor for failure to state a claim. Since the dismissals were without prejudice,

Plaintiff was permitted to file an Amended Complaint, which he did, filing a 31-page, 203-paragraph Amended Complaint, this time pleading 14 separate causes of action. Defendants have again filed Motions to Dismiss, this time against HomeAdvisor and Angi for failure to state a claim (Angi concedes, as HomeAdvisor's successor, that it is subject to the jurisdiction), and against Hawthorne for lack of jurisdiction. The Court will review the Amended Complaint to see if Plaintiff has cured the previously noted defects.

## II. <u>DISCUSSION</u>

### A. Hawthorne's Rule 12(b)(6) Motion

The basis for granting Hawthorne's first motion was that the Complaint failed to allege any basis for asserting either general or specific jurisdiction. The Court wrote that Plaintiff had failed to allege facts that would demonstrate that Hawthorne was "engaged in (1) intentional conduct, (2) expressly aimed at Illinois (3) with knowledge that Bovinett would be injured in Illinois." *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6229, 2018 WL 1234963, at *2 (N.D. Ill. Mar. 9, 2018) (citing *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012)). All Plaintiff alleged was that Hawthorne created the offending commercials, without alleging any connection to Illinois other than the fact that the photo shoot

occurred here.    That shoot was handled by HomeAdvisor, not Hawthorne.

Now, in the Amended Complaint, Plaintiff attempts to lay out an elaborate conspiracy in attempting to show that Hawthorne and HomeAdvisor together were guilty of the injury to Plaintiff which was caused by using his image in television commercials. Plaintiff seeks to accomplish this and satisfy the three requirements of specific jurisdiction (*i.e.*, intentional conduct, expressly aimed at Illinois, with the intent to injure Plaintiff in Illinois) by a combination of allegations made on "information and belief" and by adding Hawthorne to all the allegations of wrongdoing pled against HomeAdvisor.

The substance of the allegations in the Amended Complaint is that Hawthorne recommended to HomeAdvisor that it should use television commercials in its advertising mix.  HomeAdvisor could minimize expenses by producing commercials in a location such as Chicago rather than high cost areas such as New York or Los Angles. To achieve this goal, they "hatched" a plan to obtain still photographs of Plaintiff on the promise that they were not to be used in video-based ads.  This scheme allegedly involved a "multi-faceted, rolling combination of interconnected elements and timing," which included, among other things, that no mention would be made to Plaintiff of the use in video of the still photographs

- 3 -

which would be shot in Chicago by a Chicago photographer, accompanied by continual assurances by HomeAdvisor that the photographs would not be used in video, and obtaining a consent form that clearly and openly stated that Plaintiff grants HomeAdvisor "exclusive ownership" of the photos and can basically do whatever it wants with them, including use in video. (*See* Am. Compl. ¶ 52, Dkt. 54.) These promises made by HomeAdvisor, "on information and belief," were with "the knowledge and encouragement" of Hawthorne. (*Id.* ¶ 112.) Finally, Plaintiff claims that he suffered damages because of the use of the photos.

In response to the Amended Complaint, Hawthorne, in addition to its Motion to Dismiss for lack of jurisdiction, filed the affidavit of George Leon, Hawthorne's Chief Strategy Officer. (Dkt. 66-1.) In this affidavit, Leon avers that, while Hawthorne produced commercials for HomeAdvisor, its work did not commence until January 2015, several months after the photo shoot involving Plaintiff. Specifically, Hawthorne did not have any involvement or knowledge of the organizing or casting of the shoot until after it had occurred. Leon specifically denies that the commercials Hawthorne produced were directed at Illinois or that Hawthorne was involved in determining where the commercials were to run. No employee of Hawthorne, including Jessica Hawthorne-Castro, had anything to do with the alleged "scheme," nor did any employee

ever communicate with Plaintiff, his agent, Julie Tallarida, or the photographer. Nor did Hawthorne know where Plaintiff resided or conducted his business.

In response, Plaintiff filed his own declaration. (Dkt. 79-1.) In it he states that "[b]ased on my knowledge of advertising and marketing practices, and my personal knowledge and experience of how those practices work, [Leon's declaration] claiming that Hawthorne Direct had no knowledge or involvement with any aspect of the 2014 Chicago shoot until January 2015 is completely inconsistent with Hawthorne's task as producer for the Commercials containing my image and likeness, or as HomeAdvisor's ad agency in general." (*Id.* ¶ 12.) He concluded that Leon's declaration was "untrue or factually misleading." (*Id.* ¶ 13.)

On the one hand we have the Amended Complaint that lumps Hawthorne and HomeAdvisor together with general allegations of conspiracy and fraud without any specificity. On the other hand, we have the affidavit of an officer of Hawthorne that eschews the claim of conspiracy and categorically states that Hawthorne was not involved in the photo shoot, either in picking the photographer or in selecting the actor. In fact, Hawthorne had no knowledge that Plaintiff was an Illinois resident until the suit was filed (or perhaps a little earlier when, apparently, a claim against Hawthorne was made on Plaintiff's behalf). Against this we have

Plaintiff's own affidavit that appears to cast him in the role of an expert on advertising and marketing practices.

Plaintiff's affidavit, however, does not contain any specific evidence that Hawthorne had any knowledge of or any participation in the photo shoot itself. It does not allege that there was any individual present representing Hawthorne or what that individual did or did not do. Nor was Hawthorne a party to the document consenting to ownership of the photos, which was signed on Plaintiff's behalf by his agent, Julie Tallarida. All that Hawthorne appears to have done was create commercials for its client HomeAdvisor for dissemination. There is no allegation that these commercials were created in Illinois. There is no allegation that Hawthorne had anything to do with running the commercials in any specific location. This apparently was left up to HomeAdvisor. While at some point Hawthorne may have been made aware that Plaintiff was an Illinois resident, this alone would not confer jurisdiction. *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). Therefore, as was the case with the original Complaint, Plaintiff has failed to allege sufficient facts to establish personal jurisdiction over Hawthorne. Hawthorne's motion pursuant to Rule 12(b)(2) is granted. Since this is the second unsuccessful effort to establish

specific jurisdiction over Hawthorne, the motion is granted with prejudice.

## B. The Rule 12(b)(6) Motion

Defendants have moved to dismiss all but three of the fourteen counts in the Amended Complaint. The Motion seeks dismissal of Count I, Common Law Fraud; Count II, Conspiracy to Commit Common Law Fraud; Count III, Promissory Estoppel; Count VI, Implied in Fact Contract; Count VII, Implied in Law Contract; Count VIII, Violation of the Illinois Right of Publicity Act; Count IX, Invasion of Privacy by Misappropriation of Identity; Count X, Aiding and Abetting; Count XII, Rescission and Restitution; Count XIII, Declaratory Relief; and Count XIV Liability against John Does I-V. The Motion therefore leaves as viable Count IV, Breach of Contract against HomeAdvisor; Count V, Successor Liability Against Angi; and Count XI, Unjust Enrichment.

### 1. *Count I – Common Law Fraud*

The Court dismissed Count I in the original Complaint for two reasons: First, it is a claim for promissory fraud, and second, the Complaint flunked the specificity requirement of Rule 9(B). The basis for the amended Count I is the same as was the case for the original Count I: that Defendants induced Plaintiff to sit for the photo shoot by promising him that there would be no video use of the still photographs while actually intending to use them in

video.  Because the Complaint failed to allege the required specificity, *i.e.*, the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to Plaintiff, the Court dismissed the fraud count without prejudice. *Borich v. BP, PLC*, 904 F. Supp. 2d 855, 862 (N.D. Ill. 2012).  Plaintiff seeks to remedy this failing by describing a "multi-faceted, rolling combination of interconnected elements and timing," including:

> (i) before the Shoot, absolute silence with respect to the true intent to use still photographs in television Commercials, (ii) at or about August 2014 the creation of a misleading casting notice to avoid mentioning the true intent for the still photographs, (iii) travel to Chicago on or about October 8, 2014, to oversee and manage the production and creation of the still photographs and the Shoot, (iv) ensuring that no one on the set of the Shoot made any mention of the true intent for use of the still photographs, (v) repeatedly meeting any inquiry about the so-called "Library" use of the still photographs, both before, during and after the Shoot, with the response that there was to be no use in any video-based works, *e.g.*, television commercials, and particularly "no broadcast" use, (vi) that after the Shoot, to keep repeating the falsehood that there was to be "no broadcast" use of the still photographs created at the Shoot in any video-based work, (vii) that approximately early October, but after the Shoot, to present Bovinett's print agent with a Consent form while simultaneously repeating the falsehood that there was to be "no broadcast" use of the still photographs, and (viii) ultimately at or about mid-October 20, 2014, and well after the Shoot to place Bovinett's agent under duress to sign the Consent form on behalf of all the talent who participated in the Shoot, irrespective of whether they were members of SAG-AFTRA, but while again repeating the falsehood that there would be "no

broadcast" use of the still photographs, despite the
fact that such Consent form could be construed to allow
the opposite.

(Am. Compl, ¶ 52.)

In a further attempt to comply with Rule 9(b), Plaintiff, in
subsequent paragraphs based on "information and belief," alleges
that certain individuals, namely, Allison Lowrie of HomeAdvisor,
Jessica Hawthorne-Castro of Hawthorne, and Lisa Landers and Brooke
Gabbert of HomeAdvisor, schemed to commit fraud. The activities
of this group included manufacturing "absolute silence" as to the
intention to use the photographs other than in their static form
and causing the preparation of a casting notice which used the
term "library," thus "concealing" the fact that Defendants
intended to use the photos in a video medium. The final part of
the alleged scheme was to "dupe" Plaintiff's agent into executing,
on Plaintiff's behalf, an agreement which clearly on its face
grants HomeAdvisor the right to use the photos in any way it wants
and grants HomeAdvisor exclusive ownership of the photos. It was
only after the execution of that agreement that HomeAdvisor
commenced using the photos in a video format.

The problem with the "concealment" aspect of Plaintiff's
fraud claim is that there was no relationship pled between
Plaintiff and Defendants that would require Defendants to advise
Plaintiff that they intended to use the photos in a non-static

form. Under Illinois law, a duty to disclose only arises where there exists is a fiduciary or confidential relationship or where a plaintiff has placed trust and confidence in a defendant by reason of friendship, agency, or experience. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Here, no person affiliated with Defendants ever communicated with Plaintiff. Defendants' communications were with Plaintiff's agent, who is not alleged to be a co-conspirator. So, the allegation that there was "absolute silence" on the part of Defendants clearly indicates that no one told Plaintiff prior to the photo shoot whether the use of the photos would be restricted or not. The final element of the alleged "multi-faceted, rolling combination" was the so-called execution of the broadly worded "Consent and Release" executed by Plaintiff's agent on his behalf (and on behalf of certain of her other clients). The fraud allegation is that Plaintiff's agent was assured, contrary to what the document specifically stated, that the agreement did not allow video use of the photos. Rule 9(b) requires the identity of the person making the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to Plaintiff. *Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F. 3d 1102, 1106 (7th Cir. 2014). Here, apparently the communication was made to Plaintiff's agent. Since

the consent agreement is dated, presumably the communication was passed on to him after this date. However, the Complaint is silent as to the name of the individual who allegedly made the false communication.

A further problem for the fraud claims is its lack of plausibility. We are asked to believe that a theatrical agent, who, by the number of clients listed on the consent form, would seem to be experienced, would execute a document that was directly and categorically contradictory to the oral promises she received. The Complaint does allege that Tallarida was Plaintiff's agent (Am. Compl. ¶ 51), and Plaintiff makes no argument that the execution the agreement was beyond her agency authority. So, Count I fails under the theory of fraudulent inducement as well as the theory of promissory fraud. Count I is dismissed with prejudice.

### 2. *Count II - Civil Conspiracy to Commit Fraud*

Since the Court has dismissed Count I, Common Law Fraud, Count II must likewise be dismissed with prejudice because it is based on the fraud claimed in Count I.

### 3. *Count III - Promissory Estoppel*

Defendant argues that Plaintiff's promissory estoppel claim fails because he received consideration for sitting for the photos pursuant to a written agreement. Plaintiff claims this count is pled in the alternative to his breach of contract claim. This

claim, however, is not in fact pled in the alternative. Both Count III and Count IV (Breach of Contract) rely on the first ninety-three paragraphs of the Complaint, which set out all the facts upon which Plaintiff relies, and which include the allegation that an express contract was entered into. In addition, Plaintiff was paid for his work. His claim is that Defendants exceeded their authority to use his photos. "Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law." *Song v. Pil, L.L.C.*, 640 F. Supp. 2d 1011, 1016 (N.D. Ill. 2009). This is not such a case. Count III is dismissed, with prejudice.

### 4. *Count VI - Contract Implied-in-Fact*

Since Count V is directed only against Angi, it must be dismissed since Angi did not exist at the time of the relationship between Plaintiff and HomeAdvisor. An implied-in-fact contract can only arise by inference based on the conduct of the parties, *i.e.*, "it is inferred from the conduct of the parties in the milieu in which they dealt." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 770 (N.D. Ill. 2018). Count V is dismissed with prejudice.

### 5. *Count VII - Contract Implied-in-Law*

A claim arises from a contract implied-in-law when a defendant fails to make equitable payment for a benefit that it voluntarily accepted from the plaintiff. Such quasi-contracts are created and governed by the principles of equity. No implied-in-law contract can exist if there is an express contract existing between the parties concerning the same subject matter. *Zadrozny v. City Colleges of Chi.*, 581 N.E.2d 44, 47-48 (Ill. App. Ct. 1991). Plaintiff himself concedes that "so long as any of the contract-based claims survive as plausible," this claim is unnecessary. (Resp. Br. 27, Dkt. 79.) Since Count IV (Breach of Contract) remains, Count VI is dismissed with prejudice.

### 6. Count VIII - Illinois Right of Publicity Act and Count IX - Common Law Invasion of Privacy by Misappropriation of Identity

These two counts run afoul of the Illinois' applicable one-year statute of limitations. 735 ILCS 5/13-201 ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"); *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006). According to the Complaint, Defendants commenced using Plaintiff's photos in Spring 2016. He did not file this lawsuit until August 2017. The Complaint therefore runs afoul of the statute of limitations. Count VIII and Count IX are dismissed with prejudice.

### 7. *Count X - Aiding and Abetting*

This Count is dependent upon one of Plaintiff's tort claims surviving. They have all been dismissed. Thus, Count X, the aiding and abetting claim, must also be dismissed with prejudice.

### 8. *Count XII - Rescission and Restitution*

Rescission, an equitable remedy, is available where a contract is procured by fraud or misrepresentation or is based on mutual mistake. *See Home Savings Ass'n. v. State Bank of Woodstock*, 763 F. Supp. 292, 296 (N.D. Ill. 1991). Since the Court has dismissed the first two bases, the remaining question is whether there was a mutual mistake. In the event of a mutual mistake, a contract may be voidable. It would be hard to claim mutual mistake based on the allegations in the Complaint, however, since Defendants deny that there was any mistake. "The party making the mistake bears the risk." RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981). Count XII is dismissed with prejudice.

### 9. *Count XIII - Declaratory Judgment*

Plaintiff seeks declaratory judgment under 28 U.S.C. § 2201. His main request is that the Court declare the consent executed by his agent null and void because the copyright was owned by the photographer, Todd Rosenberg. (Am. Compl. ¶ 188.) The Copyright Act restricts the set of people who are entitled to bring a civil action for infringement to those who qualify as "the legal or

beneficial owner of an exclusive right under copyright . . . ." 17 U.S.C. § 501(B); *HyperQuest Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011). Thus, the aspect of the declaratory relief requested regarding the copyright is denied. The balance of the request for declaratory relief asks that the Court declare the legal effect of certain issues regarding Plaintiff's breach of contract case. Since that request involves purely issues of state law, there is a lack of federal interest in the proceeding, which is one of the reasons for a federal court to exercise its discretion in favor of dismissing declaratory judgment actions. An additional problem is that Plaintiff has made a demand for a jury trial to decide many of these issues. *Allstate Insurance Co. v. Seelye*, 198 F. Supp. 2d 629, 632 (W.D. Pa. 2001). Count XII is dismissed with prejudice.

### 10. *Count XIV – Liability Against Does I-V*

The Court dismissed the John Doe claims in the original Complaint for two reasons. First, Plaintiff failed to give the Court some indication of who these Does are and what they allegedly did. *See Dedalis v. Brown Cty. Jail*, 15-cv-1543, 2016 WL 792425, at *2 (E.D. Wis. Feb. 26, 2016). Second, Plaintiff failed to allege the domiciles of the Does so that jurisdiction could be established in the absence of a federal claim. *See Howell by Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997).

- 15 -

In fact, the Court dismissed this Count with prejudice unless Plaintiff established federal question jurisdiction. It is clear that none of the counts of the Amended Complaint allege a federal cause of action. Therefore, Count XIV remains dismissed with prejudice.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Hawthorne's Motion to Dismiss pursuant to Rule 12(b)(2) is granted with prejudice.

2. HomeAdvisor and Angi's Motions to Dismiss pursuant to Rule 12(b)(6) is granted with prejudice with respect to Counts I, II, III, VI, VII, VIII, IX, X, XII, XIII, and XIV.


**IT IS SO ORDERED.**

_____
      Harry D. Leinenweber, Judge
      United States District Court

Dated: 9/27/2018