IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAY ALAN BOVINETT,
t/a ALAN BOVINETT,

          Plaintiff,

    v.

HOMEADVISOR, INC.,
ANGI HOMESERVICES, INC.,
and HAWTHORNE DIRECT, LLC,

          Defendants.

HOMEADVISOR, INC.,

    Third-Party Plaintiff,

    v.

JULIE TALLARIDA, and
PLANET EARTH AGENCY, LLC,

    Third-Party Defendants.

Case No. 17 C 06229

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Hawthorne Direct, LLC brings a Motion for Sanctions pursuant to FED. R. CIV. P. 37 (Dkt. No. 83). HomeAdvisor, Inc., ANGI Homeservices, Inc., and Hawthorne (collectively "Former Defendants") bring a Motion for Sanctions, Attorney's Fees, and Costs pursuant to FED. R. CIV. P. 11, and alternatively 28 U.S.C. § 1927 or the Court's inherent authority (Dkt. No. 107), and a Supplemental Motion for Sanctions, Attorney's Fees, and Costs

(Dkt. No. 131-1). For the reasons stated herein, the Motion for Sanctions (Dkt. No. 83), Motion for Sanctions, Attorney's Fees, and Costs (Dkt. No. 107), and Supplemental Motion for Sanctions, Attorney's Fees, and Costs (Dkt. No. 131-1) are granted.

## I.  BACKGROUND

In August 2017, Plaintiff Ray Alan Bovinett, through his former counsel, Attorney Mark Barinholtz, sued the Former Defendants alleging a myriad of claims that stem from the alleged improper use of Plaintiff's image in the background of video commercials. Specifically, the 150-paragraph Complaint consisted of fourteen claims and sought damages of "not less than $2.8 million." (*See generally* Compl., Dkt. No. 1.) Former Defendants moved to dismiss—ANGI and Hawthorne under Rule 12(b)(2) for lack of jurisdiction and HomeAdvisor under Rule 12(b)(6) for failure to state a claim. Hawthorne's Motion to Dismiss "respectfully reserve[d] the right to pursue Bovinett and counsel for its fees and costs in what can only be characterized as an extortion attempt." (Dkt. No. 21 at 1 n.1.)

Former Defendants also presented an early settlement offer, stating that they "believe[d] that this lawsuit is being brought in bad faith, or is at least frivolous and unjustified." (Hall Decl. ¶ 2, Dkt. No. 107-1.) The Court granted the Former Defendants' Motions to Dismiss in full, leaving just the three

claims Former Defendants had not moved on for future resolution. Plaintiff, through Barinholtz, followed with a Motion for Reconsideration, which the Court swiftly denied.

Because the dismissals were without prejudice, Plaintiff, through Barinholtz, filed a 203-paragraph Amended Complaint containing fourteen claims and seeking damages of "not less than $4.65 million." (Am. Compl. at 38, Dkt. No. 54.) Former Defendants again moved to dismiss—this time HomeAdvisor and ANGI under Rule 12(b)(6) for failure to state a claim and Hawthorne under Rule 12(b)(2) for lack of jurisdiction. The parties also worked through discovery issues that included resolving each party's previously granted motion to compel. (Dkt. Nos. 59, 63, 80 & 82.) Eventually, Hawthorne filed a Motion for Sanctions arguing that Plaintiff and Barinholtz failed to identify, in response to the Court's order on Former Defendants' motion to compel, any facts supporting a good faith basis for jurisdiction over Hawthorne. (Hawthorne's Mot., Dkt. No. 83.) The Court took the Motion under advisement and subsequently granted Former Defendants' Motion to Dismiss the Amended Complaint—this time with prejudice.

In dismissing Hawthorne for lack of jurisdiction, the Court rejected the Amended Complaint's allegations of an "elaborate conspiracy" amongst the Former Defendants. (Dkt. No. 95 at 3.) The Court also dismissed all eleven claims for relief upon which Former

Defendants moved, including the nine new causes of action. (*See id.* at 7–16.) This left three causes of action remaining. Former Defendants then filed an Answer and a Motion for Sanctions, Attorney's Fees, and Costs. The Court entered and continued that Motion to be decided along with Hawthorne's prior Sanctions Motion.

After taking the depositions of three key individuals, Former Defendants filed a Supplemental Motion for Sanctions, Attorney's Fees, and Costs, which the Court entered and continued along with the other two Motions to resolve at the end of the case. Barinholtz then withdrew as Plaintiff's counsel, and Plaintiff proceeded *pro se*. Plaintiff and Former Defendants' counsel appeared at a December 3, 2019 status hearing. (12/3/19 Tr. at 2:4–9, Dkt. No. 143.) At the hearing, Former Defendants' counsel advised the Court that they had resolved all matters as to Plaintiff but that the Motions against Barinholtz were still pending. (*Id.* at 2:12–24.) Plaintiff settled with Former Defendants for about .06% of the monetary damages demanded in the Amended Complaint. (*See* Dkt. No. 156 ¶ 2; Settlement Agreement, Dkt. No. 156-1.) The Court instructed Former Defendants' counsel to attempt to resolve the remaining claims with Barinholtz and set another status hearing two weeks later. (*Id.* at 3:9–11.)

On December 17, 2019, Barinholtz, Former Defendants' counsel, and Plaintiff, via telephone, appeared for the second status

hearing. (12/17/19 Tr. at 2:4-18, Dkt. No. 147.) Former Defendants' counsel informed the Court that the attempt to resolve the remaining claims with Barinholtz had been unsuccessful and that a briefing schedule was necessary. (*Id.* at 2:20-3:4.) Barinholtz then mentioned Plaintiff's previously filed combined motion to compel and for sanctions against Former Defendants (Dkt. No. 59) and objections (Dkt. No. 85) that he believed to still be pending. (12/17/19 Tr. at 3:5-13.) The Court clarified that the parties, meaning Plaintiff himself and the Former Defendants, had resolved "whatever disputes existed between them," and the only pending claims requiring resolution were Former Defendants' sanctions claims against Barinholtz. (*Id.* at 3:14-21.)

The Court ordered that Barinholtz respond to the outstanding Motions identified on the record as Dkt. Nos. 83, 107, 131 by February 3, 2020. (*Id.* at 6:15-19; 7:1-6.) A week before that response came due, Barinholtz filed a motion for miscellaneous relief. The Court denied that motion and ordered Barinholtz to respond to the outstanding Motions by March 5, 2020. On March 5, 2020, instead of filing a response, Barinholtz filed a motion to extend. The Court also denied that motion and ordered Barinholtz to respond by March 11, 2020. Finally, the Court is in receipt of Barinholtz's response.

The Court now rules on the Motion for Sanctions pursuant to FED. R. CIV. P. 37 (Dkt. No. 83), Motion for Sanctions, Attorney's Fees, and Costs pursuant to FED. R. CIV. P. 11, and alternatively 28 U.S.C. § 1927 or the Court's inherent authority (Dkt. No. 107), and the Supplemental Motion for Sanctions, Attorney's Fees, and Costs (Dkt. No. 131-1) as follows.

## II.  DISCUSSION

Former Defendants argue that this case presents rare circumstances in which sanctions are appropriate. In support, Former Defendants focus on three broad instances of misconduct: (1) failing to obey a Court discovery order; (2) re-pleading Hawthorne in the Amended Complaint after it was clear that no facts or law supported its continued inclusion; and (3) proliferating frivolous arguments in the Amended Complaint. The Court addresses these arguments under the appropriate standards below.

### A.  Rule 37

Former Defendants seek Rule 37 sanctions for failure to obey a Court order. Rule 37 authorizes sanctions when a party "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2). When a party fails to obey a court order, the Rule requires that the court "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C). District courts have "wide latitude in fashioning appropriate sanctions." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999).

The Court previously granted Hawthorne's Motion to Compel, agreeing that Plaintiff's evasive and speculative answers to Hawthorne's first set of jurisdictional discovery requests were insufficient. (Dkt. No. 82; *see also* 8/16/18 Tr. at 5:15-24, Dkt. No. 90.) For example, Hawthorne asked Plaintiff to "[a]dmit that you, Ray Alan Bovinett, have never communicated with an employee of Hawthorne concerning the Shoot [the October 8, 2014 photo shoot underlying Plaintiff's claims.]" (Request for Admission ("RFA") No. 1 at 3, Dkt. No. 80, Ex. 1.) In response, Plaintiff asserted that he was "not in possession of sufficient knowledge or information to admit or deny" this statement. (*See id.* at 3-5.) All of Plaintiff's RFA responses were the same. (*See id.*)

Similarly, Hawthorne asked Plaintiff to identify the facts supporting his allegations, such as that Hawthorne was "determined to dramatically keep their current and future costs down, by hiring Chicago based modeling and acting talent and by creating still photography content to use in the Commercials in what they perceived to be a less sophisticated production community than Los

Angeles or New York City." (Interrogatory ("ROG") No. 4 at 6–7, Dkt. No. 80, Ex. 1.) Plaintiff responded that, "due to the level of professional experience of Jessica Hawthorne Castro in managing talent for television and motion pictures as disclosed through publicly accessible sources, the Hawthorne CEO *would have* been aware of, and sensitive to ways and means by which to minimize the cost of producing the commercials, as well as how to avoid paying residuals and fringes to union actors." (*Id.* (emphasis added).) Each of Plaintiff's ROG responses contained this "would have" speculation. (*See id.* at 4–13.)

The Court ordered Plaintiff to supplement these deficient responses with actual admissions or denials and facts by August 23, 2018. Barinholtz served supplemental responses by that date, but they contained the same deficiencies as the initial responses. For example, in response to requests for admission about Plaintiff's personal experiences, Plaintiff declined to respond and specified that he lacks "direct, in-person knowledge." (Hawthorne's Mot. ¶ 9, Dkt. No. 83.) As Hawthorne correctly notes, "[m]erely adding 'direct, in-person' does not relieve" a party from its discovery obligations. (*Id.* ¶ 10.) Also, the responses to Hawthorne's interrogatories again contained "would have" speculation as opposed to facts. (*Id.* ¶¶ 11–13.)

These deficient supplemental responses demonstrate a clear failure to comply with the Court's order to provide Hawthorne with actual admissions or denials and facts. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011) (finding that failure to comply with a district court's order was a sufficient basis to impose sanctions under Rule 37(b)(2)(A)). Barinholtz does not offer any justification for this failure, nor are there circumstances that would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C); *see also Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007) (finding no applicable exception when sanctioning attorneys for failure to comply with a court order). Indeed, Barinholtz's long-awaited response reads like an entirely new motion, outlining several strange and unsubstantiated allegations. For example, Barinholtz alleges that Former Defendants' counsel developed an improper attorney client relationship with Plaintiff and that Plaintiff, Former Defendants, and Former Defendants' counsel are now engaged in an elaborate scheme to, among other things: (1) help Plaintiff avoid paying fees and costs owed to Barinholtz; (2) improperly withhold deposition transcripts; (3) abuse confidentiality to block Barinholtz from the Court; and (4) submit a defective stipulation to dismiss the case. These rambling allegations are unsupported and make no logical sense.

Just as at the December 17, 2019 status hearing, Barinholtz again attempts to revive certain motions that he claims were "based on obstructive behavior by Defendants in discovery, including Hawthorne . . . ." (Resp. ¶ 14, Dkt No. 162.) Specifically, he cites "Plaintiff's" "own claims for sanctions (Dkt. No. 59) and for protective order (Dkt. No. 72)." (Resp. ¶¶ 4, 14 (emphasis in original).) Yet, none of these motions remain pending. First, the Court denied the motion for protective order without prejudice. Second, Plaintiff's motion to compel was granted and the sanctions motion entered and continued. Then, Plaintiff resolved all his claims, including those for sanctions, against the Former Defendants. (*See* 12/3/19 Tr. at 2:12-24; Settlement Agreement, Dkt. No. 156-1.) A claim for sanctions belongs to the client, not his counsel. *See Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320, 322-23 (2d Cir. 1987) (finding attorney's belief that client's sanctions claim belonged to him to be "thoroughly mistaken"). Thus, Barinholtz cannot offer Plaintiff's now-settled sanctions claims as his own.

Because Barinholtz served deficient supplemental responses in violation of the Court's order granting Hawthorne's Motion to Compel, Hawthorne is entitled to its expenses, including attorney's fees, for prevailing on its motion to compel and in connection with this Motion.

## B. Rule 11

Former Defendants seek Rule 11 sanctions for re-pleading Hawthorne in the Amended Complaint despite a dearth of facts and law to support its inclusion. Former Defendants also seek sanctions for the proliferation of frivolous arguments in the Amended Complaint. Federal Rule of Civil Procedure 11 requires that an attorney certify to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that any pleading or motion presented to the court (1) is not being presented for any improper purpose; (2) is warranted by existing law; and (3) has evidentiary support. FED. R. CIV. P. 11(b). Violation of these provisions is grounds for the imposition of "an appropriate sanction," which may include "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* at 11(c)(1) & (4).

One of the primary purposes of Rule 11 is "to deter baseless filings in the district court." *Cooter & Gell v. Hartmarx Corp., et al.*, 496 U.S. 384, 393 (1990). A "court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th

Cir. 1998). A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry." *Id.*

"To impose Rule 11 sanctions, the court need only find that the signor acted unreasonably in signing the pleadings based upon available factual information which a reasonable inquiry could have discovered." *ATA Info Servs., Inc. v. J.C.I., Inc.*, No 89 C 9615, 1992 WL 122799, at *1 (N.D. Ill. May 26, 1992). Whether an inquiry is reasonable is determined by an objective standard. *Id.* Rule 11 sanctions are especially appropriate where a party "chose to file a complaint naming a defendant who had virtually no connection to the alleged wrongful conduct and failed to conduct a reasonable investigation to ensure that the allegations had merit." *Id.* at *2. The filing of an amended complaint is sanctionable where the filer "knew or reasonably should have known that any claim against [defendant] was not well grounded in law and fact." *Id.* at *3.

Barinholtz signed both the Complaint and Amended Complaint. Accordingly, the question is whether "he made reasonable inquiry into the facts and law supporting the . . . allegations" therein. *Phoenix Airway Inn Assocs. v Essex Fin. Servs., Inc.*, 741 F. Supp. 734, 734 (N.D. Ill. 1990). It is obvious that he did not. First, the Complaint did not contain facts that would support a finding of personal jurisdiction over Hawthorne. Even after this Court

dismissed Hawthorne from the Complaint for lack of personal jurisdiction and denied a motion for reconsideration on that dismissal, the Amended Complaint re-pleaded Hawthorne. It also repeated much of the previously dismissed Complaint while tacking on fifty-three paragraphs of new material. Forced back into the lawsuit, Hawthorne then offered clear evidence that jurisdiction did not exist, including verified discovery responses and a sworn declaration. Yet, Barinholtz continued to assert personal jurisdiction and argued, without presenting any evidence, that Hawthorne was lying.

The Court again dismissed Hawthorne and dismissed all nine of the Amended Complaint's new causes of action, two of which ran afoul of the one-year statute of limitations. (*See* Dkt. No. 95 at 13.) The Court also dismissed the Amended Complaint's re-pleaded claims for common law fraud (Count 1) and against the Doe defendants (Count XIV) with prejudice because they contained the same deficiencies that resulted in their dismissal on the first round of motions to dismiss. (*See id.* at 7–11, 15–16.) The most basic pre-filing inquiry, had it been conducted, would have prevented all of this.

Barinholtz also prolonged the case by dodging Hawthorne's routine discovery requests. First, Barinholtz filed a motion for a protective order, looking to avoid responding to Hawthorne's

requests seeking the factual basis for the Amended Complaint's allegations. The Court denied this motion. Then, Barinholtz served deficient discovery responses, discussed in depth above, that resulted in Hawthorne's successful motion to compel. In those responses, Plaintiff claimed to not have knowledge of "facts" alleged in the Amended Complaint, and only speculated as to what Plaintiff thought "would" have happened. (*See* Dkt. No. 80.) Later served supplemental responses did nothing to remedy these deficiencies, forcing Hawthorne to move for discovery sanctions.

Despite numerous requests from counsel to produce facts establishing jurisdiction or to voluntarily dismiss Hawthorne, Barinholtz refused and pushed the case onward. This obstructionist behavior evidences a lack of good faith. This Court can find no basis to plead Hawthorne in the Complaint, let alone to re-plead Hawthorne in the Amended Complaint. And, Barinholtz had several opportunities to present evidence that he properly investigated the jurisdictional allegations before signing and filing those pleadings. Yet, the Court has seen nothing that justifies the pursuit of Hawthorne.

There is no excuse for failing to investigate the relevant jurisdictional facts prior to filing the Complaint or for the continuing failure to investigate those facts prior to filing the Amended Complaint. *See Phoenix Airway*, 741 F. Supp. at 736. But

there are several other allegations in these pleadings, beyond jurisdiction, that a basic pre-filing inquiry would have exposed as baseless. The deposition testimony of the talent agent, the photographer, and the Plaintiff model establishes the following allegations as unsubstantiated and mis-pleaded: (1) the talent agent entered into an oral agreement with HomeAdvisor that only permitted the use of photos in print but not television advertisements or broadcasts (*See, e.g.*, Am. Compl. ¶¶ 52, 54, 56–57, 59–61, 70, 76, & 119); (2) the consent and release form signed by the talent agent was not valid because she had authority to enter into only certain kinds of agreements on Plaintiff's behalf and HomeAdvisor used duress and coercion to obtain her signature (*See, e.g., id.* ¶¶ 60–62); and (3) Hawthorne conspired with HomeAdvisor to procure the talent agent's oral agreement and arrange the photo shoot (*See, e.g., id.* ¶¶ 42 & 44–54.)

As to the first set of allegations, Plaintiff testified that the talent agent never told him the photos were not going to be used in broadcasts. (Bovinett Dep. at 193:24–194:5, Ex. A to Jones Decl., Dkt. No. 131-3.) Likewise, the talent agent testified that HomeAdvisor never told her that. (Planet Earth Dep. at 48:2–49:6, Ex. B to Jones Decl., Dkt. No. 131-4.) As to the second set of allegations, both Plaintiff and the talent agent testified that they never discussed or agreed upon her authority to enter into

agreements on Plaintiff's behalf. (Bovinett Dep. at 122:2–8, 125:14–21, 126:13–23, 127:16–128:1, 133:7–134:8; Planet Earth Dep. at 165:8–166:4, 173:14–21.) Plaintiff even testified that this was possibly the first engagement booked through the talent agent, and she had no authority to enter into any type of contract on his behalf. (Bovinett Dep. at 117:4–7; 119:11–17; 352:1–22, 355:2–10.) The talent agent disagreed, testifying that she had authority because her agency represented Plaintiff. (Planet Earth Dep. at 172:14–173:13.) She also flat out rejected the duress allegations. (*Id.* at 185:19–186:7, 186:19–187:2, 190:13–191:7.) As to the third set of allegations, both the talent agent and photographer testified that they had never heard of Hawthorne or its representatives. (*Id.* at 53:24–54:14; 157:23–158:2; Rosenberg Dep. at 65:16–66:3, Ex. C to Jones Decl., Dkt. No. 131-5.) This testimony demonstrates that Barinholtz did not test several of the Amended Complaint's allegations prior to filing and that there were not discussions about the underlying events or allegations with the talent agent, photographer, and potentially even the Plaintiff.

Barinholtz disregarded clear evidence establishing a lack of jurisdiction over Hawthorne and ignored the lack of support for several of the Amended Complaint's central allegations. Even after requests from Former Defendants' counsel to voluntarily dismiss

Hawthorne and a warning that it may seek Rule 11 sanctions for the bad faith pursuit of frivolous claims in its motion to dismiss (*See* Hall Decl. ¶ 2), Barinholtz pressed onward. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015) (finding "substantial compliance" with Rule 11 notice requirements where motion to dismiss contained arguments that the complaint was frivolous and a request for attorney's fees). This kind of unjustifiable pursuit is precisely the kind of behavior Rule 11 seeks to deter. *See, e.g.*, *Burda v. M. Ecker Co.*, 2 F.3d 769, 775–76 (7th Cir. 1993) (affirming district court's sanctions against lawyer under Rule 11 for making objectively unreasonable and frivolous arguments); *Phoenix Airways*, 741 F. Supp. at 734–35 (sanctioning counsel who failed to reasonably inquire into the relevant jurisdictional facts prior to filing complaint); *Carter v. Johnson*, No. 89 C 5207, 1989 WL 134290, at *2 (N.D. Ill. Oct. 20, 1989) ("The Court finds that plaintiff's counsel violated Rule 11 by filing a complaint with no legal or factual basis for asserting personal jurisdiction."). The fact that the settlement payment from Former Defendants to Plaintiff equals about .06% of the Amended Complaint's monetary demand and constitutes a "tiny fraction" of the defense costs accumulated over the past two-plus years further demonstrates the frivolity of this litigation. (*See* Dkt. No. 156 ¶ 2; Settlement Agreement, Dkt. No. 156-1.)

This Court is not persuaded by Barinholtz's argument that it is not him but actually Former Defendants' counsel who "unreasonably multiplied the proceedings by filing multiple unnecessary motion to dismiss, by advancing vexatious and harassing motions for sanctions, by obstructing the orderly process of discovery, by concealing Defendants' involvement in at least one other matter involving dangerously misleading behavior, and otherwise making false statements to the Court." (Resp. at ¶ 26.) One need only look at the docket to know this is false. (*See, e.g.*, Dkt. Nos. 43 (granting Former Defendants' motion to dismiss Complaint), 82 (granting Former Defendants' motion to compel), & 95 (granting Former Defendants' motion to dismiss Amended Complaint).)

What worries the Court most, however, is Barinholtz's refusal to accept that these claims are not viable, most starkly illustrated by the failure to acknowledge let alone explain himself on this issue in response to this Motion. Despite being put on notice of these deficiencies by Former Defendants' counsel on "nearly a dozen occasions over the course of a year" and by the Court prior to both dismissals, Barinholtz persisted on these claims. (Sanctions Mot. at 4.) Burying one's head in the sand is not an acceptable litigation tactic. *See Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 544 (7th Cir.

2018) ("Ignorance is sanctionable, not bliss."); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988) (reversing denial of sanctions against party and counsel for "employing the ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist, unprofessional behavior this Circuit refuses to tolerate") (citations omitted). This stubborn refusal forced Former Defendants to expend significant time and resources on discovery and to obtain dismissal.

Barinholtz violated Rule 11 by certifying, filing, and advocating an Amended Complaint with no legal or factual basis to assert personal jurisdiction over Hawthorne or to support several key allegations against the Former Defendants. Former Defendants' counsel has been forced to incur costs as a result of the improper filing of this lawsuit, and the Former Defendants should not be required to sustain these costs. Therefore, Hawthorne is entitled to its expenses, including attorney's fees, incurred in connection with its motion to dismiss the Amended Complaint, the jurisdictional discovery, including the motion to compel, conducted after filing of the Amended Complaint, and this Motion. Similarly, HomeAdvisor and ANGI are entitled to their expenses, including attorney's fees, incurred in connection with their motion to dismiss the Amended Complaint, the written and fact

witness discovery conducted after filing of the Amended Complaint, and this Motion.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Motion for Sanctions (Dkt. No. 83), Motion for Sanctions, Attorney's Fees, and Costs (Dkt. No. 107), and Supplemental Motion for Sanctions, Attorney's Fees, and Costs (Dkt. No. 131-1) are granted. Former Defendants' counsel is directed to submit declarations detailing the following:

a.   The amount of reasonable attorney's fees and costs Hawthorne incurred in connection with its Motion to Dismiss the Amended Complaint, the jurisdictional discovery, including the Motion to Compel, conducted after filing of the Amended Complaint, the Motion for Sanctions under Rule 37, the Motion for Sanctions under Rule 11 and Section 1927, and the Supplemental Motion for Sanctions.

b.   The amount of reasonable attorney's fees and costs HomeAdvisor and ANGI incurred in connection with their Motion to Dismiss the Amended Complaint, the written and fact witness discovery conducted after filing of the Amended Complaint, the Motion for Sanctions under Rule 11 and Section 1927, and the Supplemental Motion for Sanctions.

The Court will determine the amount of sanctions to be awarded upon review of those declarations and any response Barinholtz wishes to file.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/23/2020